Filed 11/15/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BROOKSIDE INVESTMENTS, LTD., | B267081 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC503836) |
| v. | |
| CITY OF EL MONTE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Shepard Wiley Jr. Affirmed.

Bien & Summers, Elliot L. Bien; Law offices of Edward Z. Kotkin and Edward Z. Kotkin for Plaintiff and Appellant.

Olivarez Madruga, City Attorney, Rick R. Olivarez and Joaquin Vazquez; Demetriou, Del Guercio, Springer & Francis, Jeffrey Z.B. Springer and Tammy M.J. Hong, for City of El Monte.

————————————

In 1990 the City of El Monte enacted by initiative an ordinance that prohibited the El Monte City Council from passing any form of mobilehome park rent control. In 2012 the City Council sponsored a successful ballot measure to repeal that ordinance and then in 2013 enacted Ordinance No. 2829, the Mobilehome Space Rent Stabilization Ordinance, a program of rent control for mobilehome parks with more than 100 mobilehome park spaces.

Brookside Investments, Ltd., which owns and operates Brookside Mobile Country Club, a large mobilehome park, sued the City of El Monte, alleging the City Council's actions in proposing and advocating repeal of the 1990 ordinance violated an express prohibition of such activity in that ordinance. The superior court granted El Monte's motion for summary judgment. On appeal from the judgment Brookside repeats its argument concerning the scope of the prohibitory language in the 1990 ordinance and also argues the City Council's actions violated the California Constitution's implicit withholding of authority for a local government to propose initiative measures that amend or repeal earlier voter-approved ordinances. We reject both contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *El Monte's Mobilehome Park Rent Ordinances*

Beginning in January 1988 El Monte, a general law city, attempted to curb excessive rent increases by mobilehome park owners by mandating arbitration of rent disputes in parks of 60 or more spaces through its Mobilehome Park Rent Review Commission (Ordinance No. 2216). The commission's procedures for resolving disputes between park owners and residents were intended to provide for rent increases "consistent with basic constitutional princip[les] of fairness and equity for property owners and the need to maintain affordable housing opportunities in mobilehome parks in the City of El Monte in [the face] of rapidly escalating rents, the continuing scarcity of affordable housing, especially for low-and very-low income senior citizens, and the

2

social and economic disruption which excessive increases in space rentals will cause in this community . . . ."

At a municipal election on April 10, 1990 El Monte voters approved an initiative ordinance that repealed Ordinance No. 2216 and established the Mobilehome Tenant Rent Assistance Program (MTRAP). MTRAP mandated a 10 percent rental discount for qualified low-income seniors but limited its "rental assistance subsidy" to no more than 10 percent of the occupied spaces in a mobilehome park. It also guaranteed mobilehome park owners "the sole right to establish the price for which [the owner's] mobilehome park or premises therein is sold, leased, rented, transferred, or exchanged" and repealed "[a]ny law of the City of El Monte that would abridge such right."

Of particular significance for the case at bar, section 10 of MTRAP, Prohibition of Laws and Expenditures, provided in part, "The People of El Monte hereby prohibit the City Council from the passage of any ordinance which requires or authorizes restrictions, ceilings, controls, or arbitration, mediation, administrative hearings, or trials concerning or which in any way relates to the subject of mobilehome park rents in El Monte which affects any Landlord. The City Council is also prohibited from the expenditure of any tax revenues in connection with any such ordinance."

On July 31, 2012 the El Monte City Council approved Resolution No. 9321 calling a special municipal election to be held on November 6, 2012 (the date of the regularly scheduled General Election) for El Monte voters to consider proposed Ordinance No. 2804, the El Monte Fairness for Mobilehome Owners Ordinance, which would repeal MTRAP "in order to allow the City Council to investigate the reasonableness of rent charged to mobilehome owners and if appropriate, consider the regulation of proposed mobilehome park rent increases in the future."[1] The City Council

---

[1] Section 3 of proposed Ordinance No. 2804 stated, "The ordinance of the City of El Monte as previously adopted by the voters at the El Monte municipal election conducted on April 10, 1990, (the '1990 Ordinance'), is hereby repealed in its entirety upon the passage of this Ordinance by the voters at the El Monte municipal election conducted on November 6, 2012."

3

also authorized its members to submit written ballot arguments in favor of or against the proposal (denominated Measure F on the ballot). The voters approved Measure F, and Ordinance No. 2804 became effective December 18, 2012.

Prior to July 31, 2012 the City Council had authorized an inquiry into the effectiveness of MTRAP, including distribution of a questionnaire to mobilehome park owners seeking information regarding the extent to which the tenant rent assistance program was actually being used. Between July 31, 2012 and the election on November 6, 2012, the City approved expenditures for the conduct of the election in the form of legal notices in newspapers, translation services and the election itself.

Following adoption of Ordinance No. 2804 the City Council retained a land economics and real estate consulting firm to determine baseline rental conditions at mobilehome parks in El Monte. To address "a current threat to the public health, safety and welfare of the City," the City Council also adopted Ordinance No. 2811, an interim urgency ordinance that imposed a temporary moratorium on pending or new rent increases for mobilehome park spaces with a monthly rent of $1,000 or more and limited rent increases to no more than 7 percent on mobilehome park spaces with a monthly rental between $600 and $1,000. The initial 45-day moratorium was extended twice and remained in effect through September 30, 2013.

On September 3, 2013, after receiving the study from its consultants, the City Council enacted Ordinance No. 2829, adding Chapter 8.70, Mobilehome Park Rent Stabilization, to the El Monte Municipal Code. Ordinance No. 2829, which took effect October 3, 2013, applies only to mobilehome parks with 101 or more spaces. (Brookside has 421 spaces; one or two other mobilehome parks in El Monte also have more than 100 spaces.) According to Ordinance No. 2829's statement of purpose and findings, mobilehomes are disproportionately occupied by low-income households; rental rates at large mobilehome parks were substantially in excess of the average rents at mobilehome parks in El Monte; and rents at large mobilehome parks even exceeded the average rent for one- and two-bedroom apartments in the city. To limit future rent increases at

4

covered mobilehome parks, Ordinance No. 2829 establishes $760 per month as the "ceiling rent amount" and permits monthly rent increases each year by an amount not to exceed $50 per month for spaces with rent less than the ceiling rent amount. All proposed rent increases in excess of $50 per month and any increases that would result in monthly rent above the ceiling rent amount are subject to review by the newly established El Monte Mobilehome Park Rental Review Board. That board is mandated to consider 11 specified factors, including changes in the consumer price index and the rent lawfully charged for comparable mobilehome spaces in other parks in El Monte, when evaluating applications for rent increases with a goal of protecting mobilehome park residents from exorbitant rents and providing mobilehome park owners with a fair return on investment.

2. *Brookside's Lawsuit and the Orders Granting Summary Adjudication and Summary Judgment*

Brookside filed its original complaint for declaratory and injunctive relief on March 22, 2013 (after the repeal of the 1990 ordinance but before enactment of Ordinance No. 2829) and, pursuant to a stipulation of the parties, a first amended complaint and petition for writ of mandate on February 13, 2014. In the first cause of action in the operative pleading Brookside alleged Ordinance No. 2804, which repealed the 1990 ordinance and MTRAP, was adopted in violation of Elections Code section 9217[2] and section 10 of MTRAP and was, therefore, void and unenforceable. In particular, Brookside alleged under section 10 of MTRAP only El Monte voters, acting directly through the process defined by the Elections Code, could act to amend or repeal MTRAP; the City Council was prohibited from initiating a ballot measure to repeal MTRAP, as well as from spending public funds to support the measure. Because Ordinance No. 2804 was invalid, Brookside further alleged, the City Council's subsequent actions in adopting Ordinance Nos. 2811 and 2829 were similarly void and unenforceable. In a second cause of action for inverse condemnation Brookside alleged El Monte's actions in repealing MTRAP and approving rent control through Ordinance

---

[2]     Statutory references are to this code unless otherwise stated.

No. 2829 constituted a taking of private property without just compensation. A third cause of action under title 42 United States Code section 1983 sought damages for El Monte's deprivation of Brookside's property without due process of law.

In their stipulation allowing the filing of Brookside's amended complaint and petition for writ of mandate, the parties agreed El Monte's previously filed motion for summary judgment or, in the alternative, summary adjudication would be deemed a motion for summary adjudication limited to the issue of the validity of Ordinance No. 2804. After full briefing with the submission of extensive declarations and documentary evidence, the trial court on December 14, 2014 granted El Monte's motion. The court ruled section 9217, which provides an ordinance proposed by initiative petition and adopted by the voters may not be amended or repealed "except by a vote of the people, unless provision is otherwise made in the original ordinance," did not prohibit the City Council from placing Ordinance No. 2804 on the ballot, thereby submitting it to a vote of the people. The court also ruled the authorized expenditures incurred in connection with the ballot measure did not constitute the use of tax revenues in a manner barred by section 10 of MTRAP and Brookside had not demonstrated any improper public advocacy by city officials.

Brookside promptly filed a notice of appeal, asserting the order granting summary adjudication effectively disposed of the entire action. We dismissed the appeal as having been taken from a nonappealable interlocutory order. El Monte then filed a motion for summary judgment or, in the alternative, summary adjudication directed to Brookside's remaining claims regarding Ordinance No. 2829, the 2013 rent stabilization ordinance. In its moving papers El Monte argued Brookside could not demonstrate the El Monte rent control program constituted an arbitrary taking or that Ordinance No. 2829 violated either substantive or procedural due process. In its opposition Brookside conceded a finding that repeal of MTRAP was unlawful was an essential element of its challenge to Ordinance No. 2829 and urged the trial court to reconsider sua sponte its December 13, 2014 ruling upholding the City Council's actions in connection with Ordinance No. 2804.

The court declined to reconsider its previous rulings and granted El Monte's motion for summary judgment on July 20, 2015. Judgment was entered on August 6, 2015 denying the petition for writ of mandate and ordering that Brookside take nothing by way of its first amended complaint.

## CONTENTIONS

Brookside contends the trial court erred in granting summary judgment in favor of El Monte, not because a triable issue exists as to any material fact,[3] but because the judgment is based on an improper construction of article II, section 11 of the California Constitution, Elections Code section 9222 and MTRAP.[4] First, Brookside contends, as it did in the trial court, that section 10 of MTRAP prohibited the City Council's actions and expenditures leading to its repeal. In addition, Brookside now also contends, independent of the language of MTRAP, article II, section 11 of the state Constitution, which grants voters in cities and counties the power to adopt legislation through the initiative process, withholds from local governing bodies (here, the El Monte City Council) the authority to take any action at all on measures enacted by initiative—including originating ballot measures to amend or repeal a local initiative ordinance—unless the initiative ordinance itself specifically authorizes such action. As a result, Brookside contends, section 9222,

---

[3] In its opening brief Brookside states, "Because this appeal focuses on formal actions taken by the El Monte City Council, the material facts and proceedings are few and undisputed."

[4] As the parties agree, we review de novo the proper interpretation of the constitutional provision (Cal. Const., art. II, § 11, subd. (a)), statute (§ 9222) and local ordinance (MTRAP) at issue on appeal. (See *City of San Diego v. Shapiro* (2014) 228 Cal.App.4th 756, 771 [interpretation of a constitutional provision is a question of law we review de novo]; *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311 [meaning of statutory language presents a question of law we review de novo]; *Citizens for Hatton Canyon v. Dept. of Transportation* (2003) 112 Cal.App.4th 838, 843 [interpretation of statutory or constitutional language is a question of law we review independent of the trial court's ruling or reasoning]; *People ex rel. Feuer v. Nestdrop* (2016) 245 Cal.App.4th 664, 672 [interpretation of a local ordinance is a legal issue reviewed de novo].)

which expressly states a city's legislative body may submit to the voters, "without a petition," a proposal for the repeal, amendment or enactment of any ordinance, could not validly authorize the City Council to place before the El Monte voters a measure to repeal MTRAP.

## DISCUSSION

1. *The Local Initiative Power*

California voters adopted the initiative process by amendment of the California Constitution in 1911. (Cal. Const., former art. IV, § 1, added by Prop. 7, Special Elec. (Oct. 10, 1911), repealed 1966.) As the Supreme Court explained in *Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 591 (*Associated Home Builders*), "The amendment of the California Constitution in 1911 to provide for the initiative and referendum signifies one of the outstanding achievements of the progressive movement of the early 1900's. Drafted in light of the theory that all power of government ultimately resides in the people, the amendment speaks of the initiative and referendum, not as a right granted the people, but as a power reserved by them. Declaring it 'the duty of the courts to jealously guard this right of the people' [citation], the courts have described the initiative and referendum as articulating 'one of the most precious rights of our democratic process' [citation]. '[It] has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it.'" (Fns. omitted.)

In addition to authorizing statewide initiatives to enact statutes and amend the state Constitution,[5] the 1911 amendments to former article IV, section 1, empowered voters in

_____

[5] As amended in 1911, former article IV, section 1, provided, "The legislative power of this State shall be vested in a Senate and Assembly which shall be designated 'The Legislature of the State of California,' but the people reserve to themselves the power to propose laws and amendments to the Constitution, and to adopt or reject the same, at the polls independent of the Legislature . . . ." The procedures and requirements for circulating initiative petitions, presenting them to the Secretary of State, calling

8

counties and general law cities[6] to enact ordinances through the initiative process, as well as to review by referendum measures approved by their local governing bodies: "The initiative and referendum powers of the people are hereby further reserved to the electors of each county, city and county, city and town of the State to be exercised under such procedure as may be provided by law. Until otherwise provided by law, the legislative body of any such county, city and county, city or town may provide for the manner of exercising the initiative and referendum powers herein reserved to such counties, cities and counties, cities, and towns . . . . In the submission to the electors of any measure under this section, all officers shall be guided by the general laws of this State, except as is herein otherwise provided. This section is self-executing, but legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of the section or the powers herein reserved."

This constitutional provision for local initiative ordinances was repealed in 1966 and replaced by former article IV, section 25, which provided, "Initiative and referendum powers may be exercised by the electors of each city or county under procedures that the

---

elections and related matters for enacting an initiative measure were detailed in the amended text added to the Constitution.

[6] The 1911 amendments did not apply to cities having a charter: "Nothing contained in this section shall be construed as affecting or limiting the present or future powers of cities or cities and counties having charters adopted under the provisions of Section 8 of Article XI of this Constitution." (Cal. Const., former art. IV, § 1.) The same exception is set forth today in Article II, section 11, subdivision (a), "Except as provided in subdivisions (b) and (c) [prohibiting initiative measures that include or exclude parts of the city based upon approval or disapproval of the initiative measure and initiative measures that contain alternative or cumulative provisions], this section does not affect a city having a charter." A city charter may confer a broader initiative power than the initiative power reserved in the Constitution (*Rossi v. Brown* (1995) 9 Cal.4th 688, 696), but "may not restrict the broad power of initiative and referendum granted by the Constitution." (*Id.* at p. 704.)

Legislature shall provide."[7]  Without changing the text, this provision was renumbered in 1976 as article II, section 11, and today is set forth in article II, section 11, subdivision (a).

The local electorate's right to initiative "is generally co-extensive with the legislative power of the local governing body."  (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 775.)  However, although a legislative body through its acts may not restrict the authority of future legislatures (*Rossi v. Brown* (1995) 9 Cal.4th 688, 715; see *Bridges v. City of Wildomar* (2015) 238 Cal.App.4th 859, 867 ["""a municipal corporation cannot abridge its own legislative powers by the passage of irrevocable ordinances"""]; *County Mobilehome Positive Action Com., Inc. v. County of San Diego* (1998) 62 Cal.App.4th 727, 734), "through the exercise of the initiative power the people *may* bind future legislative bodies other than the people themselves."  (*Rossi*, at pp. 715-716.)

As plainly stated in the 1911 constitutional amendments, as well as in all subsequent iterations of this provision, in reserving the right of initiative to electors of counties and cities, the Constitution expressly authorized the Legislature to establish procedures to implement the exercise of that right.  (See *Associated Home Builders*, *supra*, 18 Cal.3d at p. 591.)  The Legislature acted quickly to provide those procedures pursuant to this constitutional directive:  At an extra legislative session held two months after adoption of the constitutional amendments providing for the initiative and referendum process, the Legislature approved, effective January 2, 1912, "[a]n act to provide for direct legislation by cities and towns, including initiative and referendum"

---

[7]     "The 1966 constitutional revision was intended solely to shorten and simplify the Constitution, deleting unnecessary provisions; it did not enact any substantive change in the power of the Legislature and the people.  The drafters of the revision expressly stated that they proposed deletion of the clauses barring the Legislature from restricting the reserved power of municipal initiative solely on the ground that it was surplusage, and that the deletion would be made 'without, in the end result, changing the meaning of the provisions.'"  (*Associated Home Builders*, *supra*, 18 Cal.3d at p. 595, fn. 12.)

10

(Stats. 1912, 1911 Ex. Sess., ch. 33, § 1, p. 131).  This legislation provided, in part, "If a majority of the qualified electors voting on said proposed ordinance shall vote in favor thereof, such ordinances shall thereupon become a valid and binding ordinance of the city or town . . . .  Such ordinance shall have the same force and effect as one passed by the legislative body of the city or town, except that no ordinance proposed by petition as in this section provided, and thereafter passed by the vote of the legislative body of the city or town without submission to a vote of the people, or voted upon and adopted by the people, shall be repealed or amended except by a vote of the people, unless provision otherwise be made in the ordinance itself." (*Id.* at pp. 132-133.)

The statutory limitation on the power of the local governing body to amend or repeal a voter-sponsored initiative ordinance has been included in substantially the same form in every amendment and restatement of the legislation governing the procedures for local initiative since 1912; today it is set forth in section 9217.[8]  It directly parallels language in former article IV, section 1, restricting the power of the Legislature to amend or repeal statewide initiatives, "[N]o act, law or amendment to the Constitution, adopted by the people at the polls under the initiative provisions of this section, shall be amended or repealed except by a vote of the electors, unless otherwise provided in said initiative measure . . . ."

Although the Legislature prohibited the local governing body from directly amending or repealing a voter-proposed, voter-approved ordinance unless such action was authorized by the ordinance itself, the January 2, 1912 legislation expressly permitted the local legislative body to submit a proposal for amendment or repeal of a

_____

[8] Section 9217 provides, "If a majority of the voters voting on a proposed ordinance vote in its favor, the ordinance shall become a valid and binding ordinance of the city. The ordinance shall be considered as adopted upon the date that the vote is declared by the legislative body, and shall go into effect 10 days after that date.  No ordinance that is either proposed by initiative petition and adopted by the vote of the legislative body of the city without submission to the voters, or adopted by the voters, shall be repealed or amended except by a vote of the people, unless provision is otherwise made in the original ordinance."

11

local initiative ordinance for voter approval: "The legislative body of the city or town may submit to the people, without a petition therefor, a proposition for the repeal of any adopted ordinance, or for amendments thereto, or for the enactment of any new ordinance, to be voted upon at any succeeding regular or special municipal city or town election, and if such proposition so submitted receive a majority of the votes cast thereon at such election, such ordinance shall be repealed, amended or enacted accordingly." (Stats. 1912, 1911 Ex. Sess., ch. 31, § 1, p. 133).[9] This provision, for which there was no corresponding language in former article IV, section 1, with respect to the statewide initiative process, has been included in substantially the same form in every amendment and restatement of the legislation governing the procedures for local initiative since 1912. (See Stats. 1915, ch. 155, § 1, p. 321; Stats. 1939, ch. 26, § 1719, p. 96 [establishing the Elections Code and including this provision as § 1719];[10] Stats. 1951, ch. 636, § 1, p. 1814; Stats. 1961, ch. 23. § 4019, p. 637 [renumbering provision as § 4019]; Stats. 1976, ch. 248, § 3, p. 510 [renumbering provision as § 4017]; Stats. 1994, Ch. 920, § 2, p. 4946 [renumbering provision as § 9222]; Stats. 2002, ch. 371, § 1, p. 1426.) It is

---

[9] As the Supreme Court noted in *People v. Kelly* (2010) 47 Cal.4th 1008, 1035, footnote 38, prior to the adoption of the 1911 constitutional amendments the Legislature, in authorizing the use of the initiative and referendum at the county level, had included in former Political Code section 4058 similar language authorizing the board of supervisors to "submit to the people, without a petition therefor, a proposition for the repeal of any adopted ordinance or for amendments thereto . . . ." (Stats. 1911, ch. 342, § 1, p. 579.)

[10] When the Legislature established the Elections Code in 1939, it separated into discrete statutory sections (former §§ 1715 and 1719) the provision restricting the local legislative body's power to directly repeal or amend a voter-proposed, voter-approved initiative and the provision authorizing the legislative body to submit for voter approval a proposition for the repeal or amendment of any ordinance. However, the Legislature specified, "[t]he provisions of this code, in so far as they are substantially the same as existing statutory provisions relating to the same subject matter, shall be construed as restatements and continuations, and not as new enactments." (Stats. 1939, ch. 26, § 2, p. 50.)

currently set forth in section 9222.[11]  The considered judgment reflected in these statutory provisions concerning the scope of the Legislature's authority to establish procedures to implement the exercise of the initiative power is entitled to "significant weight and deference by the courts."  (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 180; accord, *Greene v. Marin County Flood Control & Water Conservation Dist*. (2010) 49 Cal.4th 277, 290-291 ["'the presumption of constitutionality accorded to legislative acts is particularly appropriate when the Legislature has enacted a statute with the relevant constitutional prescriptions clearly in mind"].)

 2.  *The Validity of Section 9222*:  <u>People v. Kelly</u> *and the Unfounded Suggestion that Amendment or Repeal of a Local Initiative Ordinance Cannot Be Proposed by a City Council Unless Authorized by the Initiative Itself*

Brookside does not dispute that, by expressly authorizing a city's legislative body to propose to the voters the amendment or repeal of "any ordinance," section 9222 allows a city council to initiate a ballot measure to repeal a local initiative ordinance.  However, Brookside contends this aspect of section 9222 conflicts with the initiative power reserved to the electorate by article II, section 11 of the state Constitution and is, therefore, invalid.  This argument, based on a misreading of the historical discussion in *People v. Kelly* (2010) 47 Cal.4th 1008 (*Kelly*), is fundamentally unsound.

In *Kelly*, an appeal from a criminal conviction for possessing and cultivating marijuana, the Supreme Court considered the validity of legislation supplementing certain provisions of the Compassionate Use Act of 1996 (CUA), approved by the electorate as Proposition 215 in 1996.  The issue was whether the Legislature's creation of safe harbor provisions that prescribed a specific amount of marijuana that a qualified

---

[11]  Section 9222 provides, "The legislative body of the city may submit to the voters, without a petition therefor, a proposition for the repeal, amendment, or enactment of any ordinance, to be voted upon at any succeeding regular or special city election, and if the proposition submitted receives a majority of the votes cast on it at the election, the ordinance shall be repealed, amended, or enacted accordingly. . . ."

13

patient could possess or cultivate constituted an impermissible amendment of Proposition 215 in violation of California Constitution, article II, section 10, subdivision (c), which provides, "The Legislature . . . may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval." The Supreme Court held it did. (*Kelly*, *supra*, 47 Cal.4th at pp. 1042-1043.)

As background for its holding the Supreme Court discussed the development of California's initiative process and, specifically, article II, section 10, subdivision (c), which was added to the state Constitution in 1946. (*Kelly*, *supra*, 47 Cal.4th at pp. 1030-1042.) As the Court explained, the 1911 constitutional amendments did not allow the Legislature to amend or repeal a voter-approved initiative statute, even by super-majority vote; nor did it contain language expressly permitting the Legislature to propose to the voters an amendment or repeal of initiative measures. (*Id.* at p. 1035.) It thus "withheld all independent authority from the Legislature to take any action on measures enacted by initiative, unless the initiative measure itself specifically authorized such action." (*Ibid.*) This was in contrast, the Court noted, to the approach used in other states that had adopted the initiative process, as well as to that employed by the Legislature prior to adoption of the 1911 constitutional amendments with respect to the use of the initiative at the county level, which had in former Political Code section 4058 expressly authorized the board of supervisors to propose to the voters that an initiative measure be repealed or amended. (*Id.* at p. 1035, fn. 38; see note 9, above.)

As the *Kelly* Court recounted, because there was no express provision allowing it to do so, the Legislature through the mid-1940's "apparently believed that it lacked clear authority even to *submit* to the voters any *proposed* measure to amend [an] initiative statute." (*Kelly*, *supra*, 47 Cal.4th at p. 1037; see *id.* at p. 1038 ["the Legislature evidently believed that the strict language of the constitutional provision (former art. IV, § 1) might be construed to forbid the Legislature even from *proposing* such an amendment to the voters"].) To resolve any doubt on that issue, the Legislature adopted

14

and then proposed to the voters Senate Constitutional Amendment No. 22 (Stats. 1945, ch. 147, pp. 3163-3164), approved as Proposition 12 at the 1946 General Election, which added language to former article IV, section 1, expressly allowing the Legislature to submit to the voters a proposal to amend or repeal an initiative statute—the language now found in article II, section 10, subdivision (c).[12] That constitutional amendment gave the Legislature a method to propose amendment or repeal of an initiative-enacted law but "carefully preserved article IV's original strict safeguards by requiring the *electorate's approval* of any legislative proposal to amend or repeal (unless the initiative measure itself allowed amendment or repeal without voter approval)." (*Kelly*, at p. 1039.)

Brookside attempts to use the Supreme Court's historical review in *Kelly* to challenge the validity of section 9222 through syllogistic reasoning:

- Because the original version of former article IV, section 1, omitted express language permitting the Legislature to propose to the voters amendment or repeal of an initiative statute, a constitutional amendment was necessary to authorize the Legislature to submit such a measure to the voters.

- The original version of former article IV, section 1, did not contain express language permitting the legislative body of a county or general law city to propose to the voters amendment or repeal of an initiative ordinance.

- Therefore, a constitutional amendment, not simply legislative action such as section 9222, is necessary to grant a city council the authority to propose to the voters the repeal of an initiative ordinance.[13]

---

[12] Proposition 12 added section 1b to former article IV, section 1, to permit "the Legislature to amend or repeal any act adopted by vote of the people under the initiative, to become effective only when submitted to and approved by the electors"

[13] Brookside's syllogism can also be expressed in the following, slightly different form: If there is no express authorization for a legislative body to propose to the voters amendment or repeal of an initiative, that power has been withheld. The 1946 constitutional amendment provided the necessary express authority to the Legislature but not to the legislative bodies of counties or cities. Therefore, the power to propose amendments or repeal to the voters is still withheld from local governments.

The fallacy in Brookside's argument is that the voters in 1911, although apparently withholding from the Legislature the authority to propose amendment or repeal of statewide initiative measures, expressly empowered the Legislature to establish procedures for the exercise by local voters of their right to enact ordinances by initiative. As discussed, when the 1911 constitutional amendments were adopted granting that authority to the Legislature, there was already in place former Political Code section 4058, which permitted a county board of supervisors to submit to the voters a proposition for the repeal or amendment of any voter-adopted ordinance. (See note 9, above.) In authorizing the Legislature to continue to adopt procedures governing use of the local initiative power, the voters who enacted the 1911 constitutional amendments are presumed to have been aware of that statute (*Rossi v. Brown*, *supra*, 9 Cal.4th at p. 700, fn. 7 ["[t]he historical context in which a measure is drafted is also relevant in construing the 1911 amendments which added the initiative, referendum, and recall to the Constitution"]; see *Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1048 ["[t]he voters are presumed to have been aware of existing laws at the time the initiative was enacted"]) and to have anticipated that similar legislation would be adopted under the new constitutional provisions.[14] The Legislature did exactly

_____

[14] The Supreme Court in *Kelly* noted the Legislature had subsequently eliminated the authority of a board of supervisors to propose to the voters the amendment or repeal of a county-voter-approved initiative measure. (*Kelly*, *supra*, 47 Cal.4th at p. 1035, fn. 38.) The Court gave no date for that action, but it appears the provision was removed in 1939 when the county initiative process was moved from the former Political Code to the newly established Elections Code. (See Stats. 1939, ch. 26, §§ 1600-1621, pp. 89-92 [providing for county initiative ordinances].) In contrast, the city council's authority to propose to the voters amendment or repeal of local initiative ordinances, first granted by the Legislature immediately after passage of the 1911 constitutional amendments, has continued without interruption to the present. Although, as the *Kelly* Court pointed out, section 9217 now provides an initiative measure may not be repealed or amended "except by a vote of the people, unless provision is otherwise made in the original ordinance" (see *Kelly*, at p. 1034, fn. 35), section 9222, which the Court did not discuss, permits submission of a ballot measure for the repeal or amendment of "any ordinance" without a petition.

16

that in adopting at its 1911 extra session the statute that is today section 9222 (Stats. 1912, 1911 Ex. Sess., ch. 33, § 1, p. 131).

In sum, far from withholding the power of local legislative bodies to independently propose ballot measures affecting voter-approved initiative ordinances, the 1911 constitutional amendments gave the Legislature the authority to establish procedures allowing such action. Moreover, to paraphrase the Supreme Court's language in *Kelly*, *supra*, 47 Cal.4th at page 1039, because any such city council-generated initiative proposal requires the electorate's approval, section 9222 and its predecessors "carefully preserved article IV's original strict safeguards," thus in no way limiting or restricting the provisions of that article or the powers it reserved to the voters.

3. *Section 10 of MTRAP Did Not Prohibit the El Monte City Council from Proposing the Voters Adopt Ordinance No. 2804*

a. *The possible conflict between section 9222 and section 10 of MTRAP*

"'If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.'" (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897; see Cal. Const., art. XI, § 7 ["A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."].) A prohibited conflict exists if the local ordinance duplicates or contradicts general law or "enters an area either expressly or impliedly fully occupied by general law." (*American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1251; see *California Veterinary Medical Assn. v. City of West Hollywood* (2007) 152 Cal.App.4th 536, 548.) Notwithstanding these general principles, and even if section 9222 validly authorizes a city council to propose a ballot measure to amend or repeal a local initiative ordinance, Brookside argues, pursuant to *Associated Home Builders*, *supra*, 18 Cal.3d 582, a procedural statute such as section 9222 cannot restrict local voters' "reserved power" to include in an initiative ordinance a prohibition of future legislative ballot proposals attacking the initiative. Brookside reads far too much into *Associated Home Builders*.

17

The issue in *Associated Home Builders*, *supra*, 18 Cal.3d 582, was the validity of an initiative ordinance enacted by the voters of the City of Livermore that prohibited issuance of further residential building permits until certain local facilities met specified standards. (*Id*. at p. 588.) The trial court had enjoined the ordinance, in part, based on the Supreme Court's decision in *Hurst v. City of Burlingame* (1929) 207 Cal. 134, which had held state law requiring notice and a hearing prior to enactment of municipal zoning and land use ordinances applied to initiatives and had invalidated the initiative ordinance before it for noncompliance with that law. The Court in *Associated Home Builders* overruled *Hurst*, stating that the decision had "erroneously contriv[ed] a conflict between state zoning statutes and the initiative law." (*Associated Home Builders*, at p. 594.) No such conflict existed, the Court held, because the Legislature plainly drafted the state zoning law with a view to ordinances adopted by vote of the city council, and the provisions at issue merely set forth additional procedural requirements to those already specified in the Government Code for the enactment of ordinances in general: "Procedural requirements which govern council action, however, generally do not apply to initiatives, any more than the provisions of the initiative law govern the enactment of ordinances in council." (*Ibid*.; fn. omitted.)

Then, after noting that imposing the state law's notice and hearing requirements would essentially preclude a general law city from enacting a land use ordinance by initiative, the *Associated Home Builders* Court explained, "although the procedures for exercise of the right of initiative are spelled out in the initiative law, the right itself is guaranteed by the Constitution." (*Associated Home Builders*, *supra*, 18 Cal.3d at pp. 594-595.) Accordingly, although the Legislature can specify the manner in which general law cities enact land use ordinances, "legislation which permits council action but effectively bars initiative action may run afoul of the 1911 amendment [reserving the right of initiative to voters in counties and general law cities]." (*Id*. at p. 595.)

Contrary to Brookside's argument, neither the holding nor the analysis in *Associated Home Builders* requires that a conflict between section 9222's authorization

18

of a city council-sponsored ballot measure to amend or repeal a local initiative ordinance and a provision in such an ordinance purporting to prohibit the city council from presenting such a proposal to the voters must be resolved in favor of the prohibition in the ordinance. Unlike the state zoning laws at issue in *Associated Home Builders*, which if interpreted to apply to initiative measures would have effectively barred initiative land use ordinances, legislation that permits local voters to consider both voter-sponsored and city council-sponsored measures, including proposed ordinances affecting previously approved initiatives, does not clearly narrow or impair the right of initiative guaranteed in the state Constitution. In either case amendment or repeal would be accomplished by popular vote. (Cf. *Mobilepark West Homeowners Assn. v. Escondido Mobilepark West* (1995) 35 Cal.App.4th 32, 41.) But we need not decide in this case whether the type of restriction on city council action advocated by Brookside impermissibly conflicts with section 9222, for we agree with the trial court that section 10 of MTRAP did not prohibit the El Monte City Council from proposing the city's voters adopt Ordinance No. 2804 in 2012.

> b. *By its terms section 10 of MTRAP did not prohibit a city council-sponsored initiative measure concerning rent control*

"'[I]n interpreting a voter initiative . . . , we apply the same principles that govern statutory construction. [Citation.] Thus, "we turn first to the language of the [initiative], giving the words their ordinary meaning." [Citation.] The [initiative's] language must also be construed in the context of the statute as a whole and the [initiative's] overall . . . scheme.' [Citation.] 'Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language.' [Citation.] Where there is ambiguity in the language of the measure, '[b]allot summaries and arguments may be considered when determining the voters' intent and understanding of a ballot measure.'" (*Professional Engineers in California Government v. Kempton*, *supra*, 40 Cal.4th at p. 1037.)

As part of its findings and declaration of purpose, MTRAP stated, "The citizens of El Monte are already bearing the unnecessary financial burden of litigation and related expenses as a result of Ordinance 2216 . . . , and desire to eliminate the burden imposed thereby or by any other subsequently enacted law of the City of El Monte which affects the rights and duties set forth in this Ordinance." To effectuate that purpose, in addition to providing for the rental discount program for low-income seniors, section 9 of MTRAP repealed Ordinance No. 2216 "in its entirety if in effect upon passage of this Ordinance." In section 10, "Prohibition of Laws and Expenditures," the City Council was prohibited "from the passage of any ordinance . . . which in any way relates to the subject of mobilehome park rents" and from the expenditure of any tax revenues "in connection with any such ordinance."

The City Attorney's ballot summary stated the initiative ordinance "would invalidate all existing rent level or rent review regulations affecting mobilehome parks and would prohibit the passage of any other ordinance relating to mobilehome park rents." The ballot itself simply asked, "Shall an ordinance be adopted repealing the present Mobilehome Rent Review Program and establishing instead a Mobilehome Rent Assistance Program" with a place for the voter to mark yes or no. There were no arguments in favor of or against the proposed initiative ordinance in the ballot materials.

Brookside contends the usual and ordinary meaning of the words used in section 10 of MTRAP "defined the unwanted city council action as broadly as possible" and prohibited the El Monte City Council from taking "*any* hostile action" against the initiative. However, the actual language approved by the voters was far narrower: Section 10 barred only "the passage of any ordinance" concerning mobilehome park rents and the expenditure of city funds in connection with "any such ordinance." That language, particularly when viewed in the context of an initiative that repealed an existing rent regulation scheme enacted by vote of the El Monte City Council, reasonably connotes adoption of a new law concerning mobilehome rents by the City Council itself. (See *County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 979

20

["""[a]n ordinance in its primary and usual sense means a local law. It prescribes a rule of conduct prospective in operation, applicable generally to persons and things subject to the jurisdiction of the city"""]; see also Gov. Code, § 37100 [authorizing legislative body of general law city to "pass ordinances not in conflict with the Constitution and laws of the State or the United States"]; see generally *Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 168 ["[i]n interpreting a statute, we first consider its words, giving them their ordinary meaning and construing them in a manner consistent with their context and the apparent purpose of the legislation"].) Here, in contrast, the City Council simply drafted and approved a resolution for El Monte voters to consider whether or not to adopt proposed Ordinance No. 2804 on the November 2012 ballot.

In reaching our conclusion that adopting a resolution placing a city council-sponsored initiative on the ballot was not prohibited by section 10 of MTRAP, we do not rely on whatever formal distinction may exist between an ordinance and a resolution. (Compare, e.g., *Crowe v. Boyle* (1920) 184 Cal. 117, 149 ["[f]or many purposes resolutions and ordinances are equivalent terms"] and *County of Del Norte v. City of Crescent City, supra,* 91 Cal.App.4th at p. 979 ["in the absence of statutory or charter provisions to the contrary, a municipality can take legislative action by either resolution or ordinance"] with, e.g., *Kleiber v. City etc. of San Franacisco* (1941) 18 Cal.2d 718, 721 [San Francisco City and County charter provides that "action by the board of supervisors shall be by ordinance or resolution and that 'every legislative act shall be by ordinance'"] and *Midway Orchards v. County of Butte* (1990) 220 Cal.App.3d 765, 775 ["'[b]ecause the difference between a "resolution" and an "ordinance" is thus substantive, under case law and by deliberate legislative definition, the one . . . cannot be construed as having amounted to the other'"].) Rather, based on "the plain and direct import of the terms used" (*Arocho v. California Fair Plan Ins. Co.* (2005) 134 Cal.App.4th 461, 466), the act of submitting a ballot measure to the voters does not come within the ordinary meaning of "passage of an ordinance" prohibited by section 10 of MTRAP.

21

To be sure, the findings and declaration of purpose of MTRAP expressed a clear intent to prevent the reintroduction of mobilehome rent control through "any other subsequently enacted law of the City of El Monte." Construing that language as broadly as Brookside suggests, however, would preclude even a voter-sponsored initiative that sought to replace MTRAP with a new rent control law. Yet Brookside acknowledges in its first amended complaint that the voters of El Monte, acting through the initiative process as defined in the Elections Code, had the authority to determine whether MTRAP should be reconsidered, modified in any way or repealed. No principled reason exists based on the language of section 10 of MTRAP or the initiative's statement of purpose to distinguish between a voter-sponsored, voter-approved reconsideration of MTRAP pursuant to the procedures set forth in sections 9201 through 9220 and a city council-sponsored, voter-approved reconsideration pursuant to section 9222.

4. *The City Council Did Not Spend Public Funds in Violation of Section 10 of MTRAP*

Section 10 of MTRAP prohibited not only City Council passage of any ordinance relating to mobilehome park rents but also "expenditure of any tax revenues in connection with any such ordinance." As Brookside demonstrated in its opposition to El Monte's motion for summary adjudication, the City Council incurred expenses in placing Measure F on the 2012 ballot. An invoice for $62,450.09 from the Los Angeles County Registrar-Recorder/County Clerk is part of the record, as well as evidence El Monte paid for newspapers to publish notices of the special election and for translation of the ballot provision into Chinese, Spanish, Vietnamese, Tagalog and Korean.

The trial court found, and Brookside does not dispute, those expenditures were all of the type El Monte would incur in connection with any election—items such as "vote by mail processing," "election supplies," "printing" and "mailing and postage."[15]

---

[15] Although the El Monte mayor and a member of the city council, as well as a resident and former resident of Brookside Mobile County Club, signed the ballot argument in favor of Measure F, there is no evidence additional city funds were used because these officials advocated for voter passage of the measure.

22

Because the City Council's actions in proposing and placing Measure F on the 2012 ballot did not violate section 10 of MTRAP, its use of tax revenues in connection with that election were not prohibited expenditures under section 10.

In sum, the actions of the El Monte City Council in proposing and placing Measure F on the November 2012 election ballot were lawful.  The trial court properly granted summary judgment in favor of the City of El Monte.

## DISPOSITION

The judgment is affirmed.  The City of El Monte is to recover its costs on appeal.


PERLUSS, P. J.

We concur:


ZELON, J.


SEGAL, J.