Filed 6/30/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ALL PERSONS INTERESTED IN THE MATTER OF PROPOSITION C,<br><br>　　　Defendants and Appellants. | A158645<br><br>(City & County of San Francisco Super. Ct. No. CGC-19-573230) |

In California, "[a]ll political power is inherent in the people," who retain "the right to alter or reform" government by voter initiative "when the public good may require." (Cal. Const., Art. II, § 1.)[1] The question in this case is whether the people of a city or county may exercise this initiative power to adopt a special tax when a majority of voters concludes it would serve the public good, or does the California Constitution require a two-thirds vote?

Sixty-one percent of San Francisco voters in the November 2018 general election voted for Proposition C, entitled "Additional Business Taxes to Fund Homeless Services." The City and County of San Francisco (the City) filed this action to establish that Proposition C has been validly enacted

_____

[1] Unspecified references to "Article" are to the California Constitution.

1

through the voters' initiative power. The City's complaint against "All Persons Interested in the Matter of Proposition C" was answered by three defendants: the California Business Properties Association, the Howard Jarvis Taxpayers Association, and the California Business Roundtable (the Associations). The Associations allege that Proposition C is invalid because it imposes a special tax approved by less than two-thirds of the voting electorate. The Associations rely on provisions placed in the California Constitution by Proposition 13 and Proposition 218, which both require a two-thirds vote of the electorate to approve certain taxes adopted by local governments. (See Art. XIII A, § 4 & Art. XIII C, § 2, subd. (d).)

The trial court granted the City judgment on the pleadings, and we affirm. Following two California Supreme Court cases interpreting other language from Proposition 13 and Proposition 218, we construe the supermajority vote requirements that these propositions added to the state constitution as coexisting with, not displacing, the people's power to enact initiatives by majority vote. (See *Kennedy Wholesale, Inc. v. State Bd. of Equalization* (1991) 53 Cal.3d 245, 251 (*Kennedy Wholesale*) [Proposition 13]; *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924 (*California Cannabis*) [Proposition 218].) Because a majority of San Francisco voters who cast ballots in November 2018 favored Proposition C, the initiative measure was validly enacted.

## CONSTITUTIONAL BACKGROUND

We begin with a brief overview of the two sets of constitutional provisions at issue in this appeal, one preserving the people's right of initiative and the other restricting the government's power to tax.

2

## I. The Initiative Power

Our state Constitution was amended in 1911 to include the initiative power. (*California Cannabis, supra*, 3 Cal.5th at p. 934.) "The Constitution 'speaks of the initiative and referendum, not as a right granted the people, but as a power reserved by them.'" (*Ibid*; see Art. IV, § 1.)

Article II describes the initiative as "the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them" (Art. II, § 8), and states that this power "may be exercised by the electors of each city or county under procedures that the Legislature shall provide" (Art. II, § 11). "[A]lthough the procedures for exercise of the right of initiative are spelled out in the initiative law, the right itself is guaranteed by the Constitution." (*Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 594–595 (*Associated Home Builders*) [affording greater weight to initiative law than zoning law].)

A defining characteristic of the initiative is the people's power to adopt laws by majority vote. As originally enacted, the 1911 constitutional amendment provided: "Any act, law or amendment to the constitution submitted to the people by either initiative or referendum petition and approved by a majority of the votes cast thereon at any election shall take effect five days after the date of the official declaration of the vote by the secretary of state." (Former Art. IV, § 1.) To similar effect, state legislation providing for passage of a local initiative measure upon majority vote was first enacted in 1912. (Stats. 1912, 1st Ex. Sess. 1911, ch. 33, p. 131; see *Brookside Investments, Ltd. v. City of El Monte* (2016) 5 Cal.App.5th 540, 550.)

Currently, Article II, section 10, subdivision (a) provides that an "initiative statute . . . approved by a majority of votes cast thereon takes

3

effect on the fifth day after the Secretary of State files the statement of the vote for the election at which the measure is voted on." Parallel legislation for local initiatives is found in the Elections Code; section 9217 provides that "if a majority of the voters voting on a proposed ordinance vote in its favor, the ordinance shall become a valid and binding ordinance of the city." And section 9122 has a parallel provision for "a majority of the voters . . . of the county."[2]

The initiative power is " 'one of the most precious rights of our democratic process' [citation]. '[It] has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled." (*Associated Home Builders, supra*, 18 Cal.3d at p. 591.) Pursuant to our duty to " ' "jealously guard" ' and liberally construe" this right, we must "resolve doubts in favor of the exercise of the right whenever possible." (*California Cannabis, supra,* 3 Cal.5th at p. 934.)

## II. Restrictions on the Government's Power to Tax

Over the past four decades, restrictions on the government's taxing power have been added to the California Constitution by a series of voter initiatives "designed to limit the authority of state and local governments to impose taxes without voter approval." (C*itizens for Fair REU Rates v. City of Redding* (2018) 6 Cal.5th 1, 10 (*Citizens for Fair REU Rates*).) Two of those measures added the supermajority vote requirements at issue in the present case: Proposition 13 in 1978, and Proposition 218 in 1996.

---

[2] See also Elections Code, section 9320, with a similar provision for districts. In 1994, the Elections Code was reorganized and renumbered. (Stats. 1994, ch. 920, §§ 1–2.) Prior to that time, the local initiative majority vote rule was codified in sections 3716 (counties), 4013 (cities), and 5159 (districts) of the Elections Code. (Stats. 1976, ch. 248, § 3.)

Proposition 13 "added article XIII A to the state Constitution 'to assure effective real property tax relief by means of an "interlocking 'package' " ' of four provisions." (C*itizens for Fair REU Rates*, *supra,* 6 Cal.5th at p. 10.) The first two of these four provisions are not directly relevant here. They "capped the ad valorem real property tax rate at 1 percent (art. XIII A, § 1)" and "limited annual increases in real property assessments to 2 percent (art. XIII A, § 2)." (*Citizens for Fair REU Rates*, at p. 10.) The third provision "required that any increase in statewide taxes be approved by two-thirds of both houses of the Legislature." (*Ibid*., citing Art. XIII A, § 3.) This was the provision our Supreme Court construed in *Kennedy Wholesale.* The fourth provision, the one at issue in this case, requires "that any special tax imposed by a local government entity be approved by two-thirds of the qualified electors (Art. XIII A, § 4)." (*Citizens for Fair REU Rates,* at p. 10.)

Eighteen years after Proposition 13, Proposition 218 "added articles XIII C and XIII D to the state Constitution." (*Citizens for Fair REU Rates, supra,* 6 Cal.5th at p. 10.) Article XIII D further limits the authority of local governments to assess real property taxes and charges. And "[a]rticle XIII C buttresses article XIII D by limiting the other methods by which local governments can exact revenue using fees and taxes not based on real property value or ownership." (*Citizens for Fair REU Rates, supra,* 6 Cal.5th at p. 10.) Article XIII C categorizes all local taxes as " 'either general taxes or special taxes' (Art. XIII C, § 2, subd. (a))," and provides, "[l]ocal governments may not impose, increase, or extend: (1) any general tax, unless approved by a majority vote at a general election; or (2) any special tax, unless approved by a two-thirds vote. (Art. XIII C, § 2, subds. (b), (d).)" (*Citizens for Fair REU Rates*, at pp. 10–11.) The Supreme Court in *California Cannabis* construed the general tax restriction in subdivision (b) of Article XIII C,

5

section 2 (section 2(b)), while this case concerns the special tax restriction in subdivision (d) of the same section (section 2(d)).

**PROCEDURAL HISTORY**

## I. The Pleadings

On January 28, 2019, the City filed a complaint to validate Proposition C, which it describes as a voter initiative proposing to authorize the City to collect "additional business taxes" to be placed in a "dedicated fund" and used solely for specified homeless services, including housing programs, mental health services, prevention programs and hygiene programs.

The City alleges that Proposition C "was legally and validly adopted by San Francisco's voters" because this measure qualified for the November 2018 ballot by garnering sufficient valid signatures from registered voters, and subsequently "received the affirmative votes of 61.34% of the 351,326 voters who voted on the measure." Accordingly, the City requests a judgment establishing that "Proposition C was duly enacted by the voters of the City and County of San Francisco and is legal, valid and binding." (See Code Civ. Proc., § 860.)

In their answer to the complaint, the Associations admit that the City's description of Proposition C is accurate. The Associations also admit that Proposition C was approved by 61.34 percent of the voters. They deny, however, that Proposition C was legally and validly adopted. The Associations allege that "Proposition C is a 'special tax,' imposed for 'specific purposes' related to homeless services." (See Art. XIII C, § 1, subd. (d).) Further, they allege Proposition C is "invalid and cannot be properly enforced by the City" because it "did not receive the required two-thirds vote at the November 2018 election." The Associations contend that a two-thirds vote requirement applies to Proposition C for three reasons.

6

First, the Associations contend that Proposition C is subject to Article XIII A, section 4, which provides, with exceptions not relevant here: "Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district." The Associations allege this two-thirds vote requirement applies to voter-circulated initiatives, and that it was not satisfied here.

The Associations' second contention is that a two-thirds vote requirement applies to Proposition C pursuant to Article XIII C, section 2(d), which states: "No local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote." The Associations admit that other provisions in Article XIII C, section 2 do not apply to voter initiatives (see *California Cannabis, supra*, 3 Cal.5th 924), but allege the supermajority vote requirement does apply to a special tax proposed by voter initiative.

Third, the Associations allege that Proposition C is invalid under the San Francisco Charter, which defines an "Initiative" as "a proposal by the voters with respect to any ordinance, act or other measure which is within the powers conferred upon the Board of Supervisors to enact . . . ." (See S.F. Charter, Art. XVII and § 14.100.) According to this theory, since no unit of local government has authority to enact a special tax without concurrence of two-thirds of the electorate, the voters themselves do not have that power.

## II. Judgment on the Pleadings

In June 2019, the parties filed cross-motions for judgment on the pleadings. Judgment on the pleadings in favor of a plaintiff is appropriate when the complaint states facts sufficient to constitute a cause of action and the defendants' answer does not state facts sufficient to constitute a defense. Conversely, defendants are entitled to judgment on the pleadings when the

7

complaint does not state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 438, subd. (c).) On July 5, the trial court issued a carefully reasoned, 13-page order granting the City's motion and denying that of the Associations.

Framing the issues, the trial court used *California Cannabis, supra*, 3 Cal.5th 924, as its touchstone. In that case, the California Supreme Court held that voters may approve a general tax proposed by local voter initiative at a *special* election, even though Article XIII C, section 2 requires local governments to place a general tax before voters at a *general* election. *(California Cannabis*, at pp. 943, 945.) The constitutional constraint requiring balloting in a general election simply does not apply to voter initiatives, the *California Cannabis* court concluded. Similarly in the present case, constitutional provisions circumscribing the power of local governments to impose special taxes do not apply to voter initiatives, the trial court reasoned. Moreover, supermajority voting requirements are procedural limitations on the lawmaking authority of a legislative body that do not apply to the initiative power absent evidence of a clear indication of intent to impose such a restriction, which the court did not find here. Accordingly, the trial court concluded that Proposition C is valid and enforceable as an initiative approved by majority vote.

## DISCUSSION

In the present appeal, the Associations contend that they, rather than the City, are entitled to judgment on the pleadings. Their appeal is supported by amici curiae, as is the City's defense of the judgment.[3]

---

[3] Supporting the Associations are the Council on State Taxation, a nonprofit trade organization whose stated objective is "to preserve and promote the equitable and nondiscriminatory state and local taxation of

Judgment on the pleadings " 'is equivalent to a demurrer.' " (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.) We derive the pertinent facts from properly pleaded allegations in the challenged pleading and judicially noticeable matters[4] and our standard of review is de novo. (*Ibid.*)

De novo review is proper for the additional reason that we are called upon to construe constitutional provisions. (*California Cannabis, supra,* 3 Cal.5th at pp. 933–934.) In undertaking this task, our objective is to give effect to the intended purpose of these provisions. We begin with the text, ascribing to words their ordinary meaning and considering their context by taking account of related provisions and the broader constitutional scheme. If a provision's intended purpose cannot be gleaned from the text in context, then we may consider extrinsic sources. And, as to provisions enacted

---

multijurisdictional business entities," and Greenberg Traurig, LLP, a law firm that is "concerned with the potential ramifications" of this case. The City is supported by Our City Our Home, which describes itself as a "not-for-profit organization and campaign committee that qualified Proposition C for the November 2018 San Francisco ballot," and Margot Kushel and Cynthia Nagendra, individuals who wish to inform the court about "the impact of Proposition C on people experiencing homelessness."

[4] This court has received four requests for judicial notice. We grant requests from amicus Our City Our Home and Greenberg Traurig respectively, to take judicial notice of legislative history materials pertaining to the constitutional provisions at issue in this case, some of which were judicially noticed below. (Evid. Code, § 459.) The other two requests were filed by the Associations. We grant those requests to the extent they seek judicial notice of documents pertaining to other local initiative measures that were submitted for voter approval. However, we deny the Associations' overbroad, ambiguous request that we take judicial notice of matters for which judicial notice was "sought" in the trial court.

through voter initiative, we presume electors are aware of existing law. (*Ibid.*)

## I.  Proposition 13 (Article XIII A, Section 4)

The Associations first contend that because Proposition C was not approved by a two-thirds vote it is invalid under Article XIII A, section 4. According to the Associations, this provision, which is an essential component of Proposition 13, "is sufficient all by itself to invalidate Proposition C." We disagree.

The text of Article XIII A, section 4 states that "Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes," except for taxes relating to the value, possession, or sale of real property. This language is "ambiguous in various respects." (*Los Angeles County Transportation Commission v. Richmond* (1982) 31 Cal.3d 197, 201 (*Richmond*).) For example, although the verb "may" is "permissive rather than restrictive," our high court has interpreted the provision as a limitation on the power of local governments. (*Ibid.*, citing *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 220 (*Amador Valley*).)

Another source of potential ambiguity is the phrase "Cities, Counties, and special districts." All three of these terms refer to governmental entities, which traditionally exercise their power to tax through an elected board of supervisors, city council, or other representative body. The City's reading of section 4's language is that these elected bodies "may impose special taxes" only if two-thirds of the voters also approve. So understood, the text describes how constituted local governments may impose special taxes. The electorate, according to this interpretation, is distinct from and not included in the phrase "Cities, Counties, and special districts." And section 4 does *not*

10

read, "Cities, Counties, special districts, *and the people of such districts exercising their initiative power*, by a two-thirds vote of the qualified electors of such district, may impose special taxes."

The Associations, by contrast, assert that a generic reference to "cities" or "counties" includes the electorate in these jurisdictions. They point to cases that contrast such generic references with more specific terms that clearly do not include the electorate, such as "city council" or "board of supervisors." (See, e.g., *City of Dublin v. County of Alameda* (1993) 14 Cal.App.4th 264, 279 (*Dublin*).) According to this interpretation, the people, in exercising their initiative power, are required also to muster a two-thirds vote to enact a special tax, even though there is no express mention of the initiative power.

We find each of these interpretations plausible, when reading section 4 in isolation. Facing ambiguous language, we turn to context to interpret section 4, starting with other provisions of the California Constitution. (*California Cannabis, supra,* 3 Cal.5th at pp. 933–934.) Neither section 4 nor any other provision in Article XIII A mentions the initiative power, and this silence drives our analysis. When Proposition 13 was approved by California voters in 1978, the initiative power had long been ensconced in our Constitution. (*California Cannabis, supra*, 3 Cal.5th at p. 934.) "Initiatives, whether constitutional or statutory, require only a simple majority for passage." (*Kennedy Wholesale, supra*, 53 Cal.3d at p. 250.) Indeed, the Associations concede that "*as a general matter*" initiatives are adopted by majority vote. If the voters who approved Proposition 13 (by a majority vote) intended to constrain the constitutionally protected power of future voters to approve initiatives by majority vote, would they not have manifested that intent by some express reference to the initiative power?

11

As it happens, we are not the first court to grapple with Proposition 13's silence on the initiative power. Our state Supreme Court in *Kennedy Wholesale, supra,* 53 Cal.3d 245, first rejected an argument that another provision of Proposition 13—section 3 of Article XIII A—impliedly repealed the people's power to increase state taxes by voter initiative, and then interpreted section 3's two-thirds vote requirement as inapplicable to statewide initiative statutes. The approach to constitutional interpretation and the result reached in *Kennedy Wholesale* compel our conclusion that the two-thirds vote requirement in section 4 does not apply to local initiatives.

*Kennedy Wholesale* was a constitutional challenge to Proposition 99, a 1988 initiative statute that increased state taxes on tobacco products. (*Kennedy Wholesale, supra,* 53 Cal.3d at p. 248.) Plaintiff, a tobacco product distributor, argued that Proposition 99 violated Article XIII A, section 3, which at the time provided, "any changes in State taxes enacted for the purpose of increasing revenues . . . must be imposed by an Act passed by not less than two-thirds of all members elected to each of the two houses of the Legislature." (*Kennedy Wholesale*, at p. 249.) According to the plaintiff, a plain reading of this provision signified that "only the Legislature can raise taxes." (*Ibid*.) The *Kennedy Wholesale* Court recognized that section 3 was susceptible to that interpretation because, read literally, section 3 required that any state tax increases " '*be imposed by . . . the Legislature.*' " (*Kennedy Wholesale*, at p. 249.) Yet the Court found the provision "ambiguous when read in the context of the whole Constitution," particularly those provisions preserving the initiative power. (*Ibid*.) The *Kennedy Wholesale* Court resolved this contextual ambiguity on the basis of three factors that apply in our case.

12

First is the general principle that " 'the law shuns repeals by implication.' " (*Kennedy Wholesale, supra*, 53 Cal.3d at p. 249.) To interpret Article XIII A, section 3 as giving the Legislature exclusive power to raise taxes would have impliedly repealed the initiative power reserved to the people in Article IV, section 1, despite the fact that section 3 did "not even mention the initiative power, let alone purport to restrict it." (*Kennedy Wholesale*, at p. 249.) *Kennedy Wholesale* refused to construe section 3 in this manner, reminding courts of our obligation to harmonize, whenever possible, potentially conflicting constitutional provisions. So, here, we will decline to construe section 4 in a manner that repeals by implication the initiative power to pass local laws by majority vote. Nowhere does Proposition 13 mention, let alone purport to repeal, the constitutionally-backed requirement in the Elections Code that a local initiative measure take effect when it garners a majority of votes cast.

The second principle of construction applied in *Kennedy Wholesale* is specific to citizen initiatives. Calling the power of initiative, " ' " 'one of the most precious rights of our democratic process,' " ' " the Supreme Court declined to adopt an interpretation of section 3 that would limit the initiative power: "we must *resolve any reasonable doubts in favor of the exercise of this precious right,' " Kennedy Wholesale* instructs. (*Kennedy Wholesale, supra*, 53 Cal.3d at p. 250.) Applying that principle here, we will reject a construction of Article XIII A, section 4 that hobbles the exercise of the initiative power by lashing it to a supermajority vote requirement.

The third relevant factor under *Kennedy Wholesale* considers extrinsic evidence bearing on the meaning of the text in question. Having found Article XIII A, section 3 ambiguous in context, the Supreme Court went on to consider the official ballot pamphlet as evidence of the intent of the voters

13

who adopted Proposition 13. (*Kennedy Wholesale*, *supra,* 53 Cal.3d at p. 250.) Importantly, the Court found no evidence there to "support[] the inference that the voters intended to limit their own power to raise taxes in the future by statutory initiative." (*Ibid*.) "To the contrary," Proposition 13 was directed against " 'spendthrift politicians' " and in favor of restoring " 'government of, for and by the people.' " (*Ibid*.) This populist theme, the Court found, was inconsistent with the claim that voters intended Proposition 13 to limit their own power to raise taxes by initiative. (*Kennedy Wholesale,* at pp. 250–251.)

None of the evidence *Kennedy Wholesale* cites is specific to section 3, as distinct from section 4, of Article XIII A. (See Ballot Pamp., Primary Elec. (June 6, 1978) Proposed amends. to Cal. Const. with arguments to voters, p. 59 (Ballot Pamp.).) Indeed, we find in the official ballot pamphlet nothing to support an inference that the voters adopting Proposition 13 intended to limit their own ability to raise local taxes by initiative, and to adopt such initiatives by majority vote. In addition to the populist arguments cited in *Kennedy Wholesal*e, there are multiple references in the Legislative Analyst's discussion of Proposition 13 that characterize the measure as restricting the ability of "local governments to impose" taxes, with no suggestion the initiative similarly constrains local electorates. (Ballot Pamp., at pp. 56, 60.)

In sum, *Kennedy Wholesale* rejected the taxpayer's argument that Proposition 13 impliedly repealed the voters' power to raise state taxes, relying on legal principles and evidentiary facts that apply equally here. To avoid abridging by implication the people's initiative right, and to comport with the intent of the voters as it can be gleaned from the ballot pamphlet, we will not apply the two-thirds vote requirement to local citizens' initiatives.

Moreover, another aspect of *Kennedy Wholesale* is relevant here. After the Supreme Court rejected the plaintiff's primary argument, it went on to reject the plaintiff's alternative argument, that if Article XIII A, section 3 did not repeal the initiative power to raise taxes, then it did at least impose, implicitly, a two-thirds vote requirement on any such initiative measure. (*Kennedy Wholesale, supra*, 53 Cal.3d at p. 251.) The Court rejected this interpretation as conflicting with Article II, section 10, "which expressly provides that an initiative statute takes effect if '*approved by a majority*.'" (*Kennedy Wholesale*, at p. 251.) The Court also rejected this interpretation as not compelled by the language in section 3 requiring a two-thirds vote of the Legislature to raise taxes. The *Kennedy Wholesale* plaintiff had argued that because the voters' lawmaking power is no greater than the Legislature's, the electorate was bound by the supermajority voting requirement that section 3 imposes on the Legislature. (*Kennedy Wholesale*, at p. 251.) The Court affirmed that although the voters may not "enact a law of a nature that exceeds a limitation on the state's lawmaking authority, such as the right of free speech," this rule does not extend to "legislative *procedures*, such as voting requirements." (*Id*. at p. 252.) Because the Constitution establishes different procedures for the initiative and legislative processes, supermajority requirements and other procedural rules "cannot reasonably be assumed to apply to the electorate without evidence that such was intended." (*Id*. at p. 252.) In reaching this holding, the Court applied a principle of California constitutional jurisprudence that pre-dates Proposition 13. (See e.g. *Associated Home Builders, supra,* 18 Cal.3d at p. 594 ["Procedural requirements which govern *council* action . . . generally do not apply to initiatives"].)

15

In the present case, the Associations' interpretation of Article XIII A, section 4 suffers from the same infirmities as the *Kennedy Wholesale* plaintiff's alternative interpretation of section 3. Both imply a requirement for a two-thirds vote to adopt an initiative, thereby creating a conflict with express language in Article II, section 10 and the constitutionally compelled provisions in the Elections Code requiring only a majority vote. (See Elect. Code, §§ 9217, 9122.) Both seek to import a two-thirds vote requirement that is a procedural, rather than a substantive, limitation on lawmaking power without evidence that such was intended.

Ignoring *Kennedy Wholesale*'s key holdings, the Associations seize on dictum the Court expressed when rejecting yet another theory for restricting the initiative power. The *Kennedy Wholesale* plaintiff argued that after Proposition 13 was passed, section 4 of Article XIII A became the exclusive means by which voters could raise taxes. (*Kennedy Wholesale, supra*, 53 Cal.3d at p. 252.) The Court summarily rejected this argument because it depended on the assumption—already rejected—that Proposition 13 implicitly repealed the initiative power. (*Kennedy Wholesale*, at p. 252.) The Court also pointed out that section 4's text was strong evidence that "the voters knew how to impose a supermajority voting requirement upon themselves when that is what they wanted to do." (*Kennedy Wholesale*, at p. 252.) The Associations use this dictum to argue that Article XIII A, section 4 applies to voter-circulated initiatives, but they misconstrue what the Court said in *Kennedy Wholesale*. The Court simply acknowledged section 4's two-thirds vote requirement that applies when local government entities—"Cities, Counties, or special districts"—seek to impose special taxes. The Court did not say or suggest that the same requirement applies to local initiatives. (*Kennedy Wholesale*, at p. 252.)

Finally, *Kennedy Wholesale* briefly mentions another principle that reverberates from two earlier cases construing ambiguous language in Article XIII A, section 4:  this provision "must be strictly construed . . . so as to limit the measures to which the two-thirds requirement applies." (*Kennedy Wholesale, supra*, 53 Cal.3d at p. 252, fn.; see *City and County of San Francisco v. Farrell* (1982) 32 Cal.3d 47 (*Farrell*) & *Richmond, supra,* 31 Cal.3d 197.)  *Farrell* construed the term "special tax," and *Richmond* construed the term "special district," in each case as these terms appear in Article XIII A, section 4.  Decrying the "fundamentally undemocratic nature of the requirement for an extraordinary majority," these cases insist that "the language of section 4 must be strictly construed and ambiguities resolved in favor of permitting voters of cities, counties and 'special districts' to enact 'special taxes' by a majority rather than a two-thirds vote." (*Richmond*, at p. 205; see also *Farrell*, at pp. 52, 57.)  This principle is at odds with the Associations' construction of section 4, which would expand rather than contract the anti-democratic reach of the two-thirds requirement.

Aside from *Kennedy Wholesale*, the Associations cite two other cases as support for their argument that the supermajority vote requirement in Article XIII A, section 4 applies to voter initiatives:  *Altadena Library Dist. v. Bloodgood* (1987) 192 Cal.App.3d 585 (*Altadena Library*); and *Dublin, supra*, 14 Cal.App.4th 264.

*Altadena Library, supra,* 192 Cal.App.3d 585, involved a 1983 ballot initiative that would have authorized the Altadena Library District to levy a special parcel tax to offset losses resulting from the passage of Proposition 13. The measure was approved by 64.8 percent of the district's voters, but the county controller refused to levy the new tax because the measure did not satisfy Proposition 13's supermajority vote requirement, which he took to

17

apply. (*Altadena Library*, at p. 587.) The Library District and its supporters sought mandate relief, which was denied. On appeal, they argued that (1) the Library District was not a special district within the meaning of Article XIII A, section 4, and (2) applying the supermajority vote requirement to a library district that provides constitutionally protected educational services violates equal protection. (*Altadena Library,* at p. 589.) The Court of Appeal rejected both contentions and affirmed the judgment.

The Associations argue that the *Altadena Library* court necessarily found that Article XIII A, section 4 applies to voter initiatives because without that premise the court's analysis would have been gratuitous. We disagree. *Altadena Library* does not address whether the supermajority vote requirement in Article XIII A, section 4 applies to voter initiatives. The appellants (who did not have the benefit of *Kennedy Wholesale)* limited their appeal to the question whether the supermajority vote requirement could be constitutionally applied to a library district. Appellants never argued that the voters had validly exercised their initiative power when they approved the measure by a majority vote, so that issue was not before the court. "Opinions are not authority for propositions not considered" (*Asahi Kasel Pharma Corp. v. Actelion LTD* (2013) 222 Cal.App.4th 945, 962, fn. 13), and *Altadena Library* takes pains to spell out that the "opinion is confined to the specific constitutional issue the library supporters raised," not purporting to decide "every other constitutional challenge which might be lodged against the supermajority requirement in art. XIII A, section 4." (*Altadena Library, supra*, 192 Cal.App.3d at p. 592, fn. 1.)

For similar reasons, the Associations are mistaken in relying on *Dublin, supra*, 14 Cal.App.4th 264, which involved a recycling plan that was added to the Alameda County Charter by "Measure D," a 1990 initiative

approved by a majority of county voters. The City of Dublin secured a writ of mandate in the trial court invalidating Measure D on several grounds including that it had not been approved by a supermajority vote, but the judgment was reversed on appeal. With respect to Article XIII A, section 4, the Court of Appeal found that Measure D did not constitute a special tax. (*Dublin*, at pp. 281–285.) Thus, *Dublin* upheld Measure D without addressing the more fundamental question of whether section 4 applies to voter initiatives.

Finally, the Associations argue, in a variety of ways, that even without considering published cases, this court should follow the general consensus that Proposition 13 applies to voter initiatives. The Associations cite anecdotal evidence that many local governments, including at one time the City, have agreed with them that Article XIII A's supermajority vote requirement applies to voter initiatives. But we question the Associations' premise that a general consensus on this issue emerged in the absence of a judicial decision squarely addressing the question. When our Supreme Court upheld the constitutionality of Proposition 13, it explicitly cautioned that " 'the interpretation or application of particular provisions of the act should be deferred for future cases in which those provisions are more directly challenged.' " (*Amador Valley, supra,* 22 Cal.3d at p. 219.)

The Court also instructed that, in interpreting Article XIII A, courts should give "appropriate weight . . . to the contemporaneous construction of the legislative and administrative bodies charged with its enforcement," specifically, the state Legislature. (*Amador Valley, supra*, 22 Cal.3d at p. 248; see also *Richmond, supra*, 31 Cal.3d at p. 203 [ambiguities "may be resolved by referring to" ballot materials "and the contemporaneous construction of the Legislature"].) And here, the Legislature's

contemporaneous construction of Article XIII A, section 4 does not support the Associations' argument. To implement section 4 after Proposition 13 passed, the Legislature formally adopted Government Code sections 50075 through 50077, which apply exclusively to the taxing activity of the legislative body of a city, district or local agency. (See *Richmond, supra,* 31 Cal.3d at p. 207.) These sections of the Government Code do not address the taxing authority of local electorates. Nor did the Legislature amend the Elections Code to carve out a Proposition 13 exception to the provisions requiring local initiative measures to take effect when a majority of voters approve them. Indeed, the Legislature reorganized and renumbered these sections of the code without changing the requirement that local initiatives take effect when they garner majority support. (Stats. 1994, ch. 920, *supra*.) Thus, the contemporaneous interpretation that our Supreme Court considers most useful—that of the Legislature—runs counter to the supposed consensus on which the Associations so heavily rely.[5]

---

[5] In response to the brief of amicus Our City Our Home, the Associations cite Proposition 219, which the Legislature placed on the ballot in June 1998, as evidence that the Legislature "understood" different types of local initiatives to be subject to different vote thresholds. This argument misunderstands Proposition 219. In relevant part, Proposition 219 outlaws statewide initiatives, legislative measures, and local ballot measures containing alternative or cumulative provisions that become law depending on the margin by which the measure passes. (Ballot Pamp., Primary Elec. (June 2, 1998) Legislative Constitutional Amendments, p. 6.) Thus, after Proposition 219 a local ballot measure could not provide for one outcome if the measure garnered a simple majority of votes and a different outcome if it garnered more than, say, 55 percent or 66 percent of the vote. The ballot pamphlet succinctly explained the problem with such a measure: "a 'yes' vote could mean two different things." (*Ibid.*) Nothing about Proposition 219 depends on any particular understanding of Article XIII A, section 4. The different vote margins addressed in Proposition 219 are those specified in a

20

In any event, we think it important not to lose sight of the purpose of the rule that permits us to take account of contemporary constructions given to an enactment by the legislative bodies charged with its implementation. The rule is an aide for interpreting "an ambiguous statute or constitutional provision" to the extent that contemporary construction "sheds light on the intent underlying the measure." (*Rossi v. Brown* (1995) 9 Cal.4th 688, 699, fn. 6.) We conclude that, when read in harmony with Article II's reservation of the initiative power and in light of the evidence of voter intent discussed above, Article XIII A, section 4 is no longer ambiguous. As *Rossi* also observed, "[a]ny doubts with respect to the right of the people to adopt legislation governing taxes through the initiative process should have been laid to rest by . . . *Kennedy Wholesale*." (*Rossi*, at p. 709.)

Section 4 requires governmental entities to gain the approval of a supermajority of voters before imposing a special tax. It does not repeal or otherwise abridge by implication the people's power to raise taxes by initiative, and to do so by majority vote. Any such partial repeal by implication is not favored by the law, which imposes a duty on courts to jealously guard, liberally construe and resolve all doubts in favor of the exercise of the initiative power. (See e.g. *Associated Home Builders, supra,* 18 Cal.3d at p. 591; *Perry v. Brown* (2011) 52 Cal.4th 1116, 1140.)

## II.  Proposition 218 (Article XIII C, Section 2)

By separate argument, the Associations contend that Proposition C is invalid under Article XIII C, section 2(d), which was added to the state constitution by Proposition 218. The Associations acknowledge that Article XIII C, section 2(d) should be interpreted in a manner that is consistent with

future measure to be put before the voters, not somehow derived from Article XIII A, section 4.

Article XIII A, section 4, since "Proposition 218 is Proposition 13's progeny" and "must be construed in that context." (Quoting *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 838.) And the Associations' authority supports the contention that Proposition 218 reiterated and reaffirmed the supermajority vote restriction as it was first imposed by Proposition 13. (See, e.g., *City of San Diego v. Shapiro* (2014) 228 Cal.App.4th 756, 779.) *Kennedy Wholesale* holds, as we have seen, that Proposition 13 was not intended to restrict the people's power of initiative. (*Kennedy Wholesale*, *supra*, 53 Cal.3d at p. 249.) Our Supreme Court reaffirmed this holding with regard to Proposition 218 in *California Cannabis.* (*California Cannabis, supra*, 3 Cal.5th at p. 941.)

Consider first the plain language of Article XIII C, section 2(d). It provides, "No local government may impose, extend or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote." This provision, like Article XIII A, section 4, makes no explicit or implicit reference to the initiative power.

The Associations contend that the term "local government" in section 2(d) is broad enough to include voters exercising their initiative power, so that initiatives imposing a special tax require a two-thirds vote. Article XIII C, section 1 defines " 'Local government' " to mean "any county, city, city and county, including a charter city or county, any special district, or any other local or regional governmental entity." This definition—like Article XIII A, section 4—lists specific governmental entities but does not reference the electorate. This definition also contains a catch-all for "other . . . governmental entit[ies]," which only strengthens the City's argument that "local government" refers to constituted governmental entities, not to the electorate exercising its initiative power.

In construing section 2(d), we are helped by recent California Supreme Court authority. *California Cannabis, supra*, 3 Cal.5th 924 interpreted Article XIII C, section 2(b), whose language parallels section 2(d). Section 2(b) provides, "No local government may impose, extend, or increase any general tax unless and until that tax is submitted to the electorate and approved by a majority vote." (Art. XIII C, § 2, subd. (b).) The same definition of "[l]ocal government" expressly applies to both subdivisions of section 2. (Art. XIII C, § 1 ["As used in this article . . . [¶] . . . [¶] 'Local government' means . . ."].)

*California Cannabis* involved a 2014 voter initiative to repeal a citywide ban on medical marijuana dispensaries and impose licensing and inspection fees on dispensaries. (*California Cannabis*, *supra*, 3 Cal.5th at p. 932.) Proponents of the initiative requested that it be placed before voters at a special election, but the City determined the initiative had to await the next general election ballot because the licensing and inspection fee was a general tax under Article XIII C, section 2. (*California Cannabis,* at p. 932.) The initiative proponents filed a mandate petition, arguing, inter alia, that Article XIII C did not apply to voter initiatives. While the case was pending, the medical marijuana initiative was defeated in a general election, but the Supreme Court exercised discretion to decide the case because of "important questions of continuing public interest that may evade review." (*California Cannabis,* at p. 933.)

The *California Cannabis* court framed the dispositive issue as whether Article XIII C restricts the ability of voters to impose taxes via initiative. (*California Cannabis, supra,* 3 Cal.5th at p. 930.) To answer this question, the Court applied *Kennedy Wholesale,* considering the text of relevant provisions and other indicia of their intended purpose. (*California Cannabis,*

at p. 931.)  Observing that the text of Article XIII C, section 2 "only applies to actions taken by a 'local government,' " the Court found:  "nothing in the text of article XIII C, or its context, supports the conclusion that the term 'local government' was meant to encompass the electorate."  (*California Cannabis,* at pp. 936 & 946–947.)  Even if this term were ambiguous, the Court concluded, extrinsic evidence established that the voters who adopted Proposition 218 did not intend Article XIII C, section 2 to burden the initiative power.  (*California Cannabis,* at pp. 938–939.)  In terms that apply equally to the issue before us, the Court held that "article XIII C does not limit the voters' 'power to raise taxes' " because a "contrary conclusion would require an unreasonably broad construction of the term 'local government' at the expense of the people's constitutional right to direct democracy, undermining our longstanding and consistent view that courts should protect and liberally construe it."  (*California Cannabis,* at p. 931.)  Summing up its analytical approach, the Court explained:  "[w]ithout a direct reference in the text of a provision—or a similarly clear, unambiguous indication that it was within the ambit of a provision's purpose to constrain the people's initiative power—we will not construe a provision as imposing such a limitation."  (*Ibid.*)

The Associations contend that *California Cannabis* is inapposite because, while voters may not be "local government" for purposes of determining whether a general tax must be submitted to voters at a general election, they are "local government" for purposes of applying the supermajority vote requirement.  We see no basis for this distinction.  Sections 2(b) and 2(d) are found in the same article and section of the state Constitution.  They were both added by Proposition 218.  They employ parallel language and incorporate the exact same definition of local

24

government set forth in Article XIII C, section 1. The *California Cannabis* Court held that the definition of "local government" in Article XIII C, section 2 of the Constitution is not "broad enough to include the electorate." (*California Cannabis, supra*, 3 Cal.5th at p. 937.) That holding applies here.

Insisting that *California Cannabis* can be distinguished, the Associations argue that *California Cannabis* itself recognizes section 2(d) as materially different from section 2(b) because in section 2(d) voters explicitly imposed a two-thirds vote requirement on themselves. Like *Kennedy Wholesale, California Cannabis* recognizes the undisputable fact that section 2(d) imposes a two-thirds vote requirement. But the Associations' argument begs the question, to what kinds of measures does this two-thirds vote requirement apply? To answer this question, we follow controlling precedent, including *California Cannabis,* which construes the precise language that we are called upon to interpret here. Under *California Cannabis* the term "local government" in Article XIII C does not include the voting electorate. (*California Cannabis, supra*, 3 Cal.5th at pp. 936–940.) Even if this term could be construed as ambiguous, the *California Cannabis* court reviewed official ballot materials pertaining to Proposition 218 and found *no evidence* that Proposition 218 was intended to "rescue voters from measures they might, through a majority vote, impose on themselves." (*California Cannabis*, at p. 940.)

"Proposition 218 simply extends the long standing constitutional protection against politicians imposing tax increases without voter approval." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) Argument in favor of Proposition 218, at p. 76.) It does not constrain the people's initiative power.

25

## III. The San Francisco Charter

Finally, the Associations contend that Proposition C is invalid under the City's Charter because the measure failed to garner a two-thirds vote. The Charter recognizes voters' initiative power (S.F. Charter, § 14.100), as long as an initiative measure is "within the powers conferred upon the Board of Supervisors to enact" (S.F. Charter, Art. XVII). This means "the electorate has no greater power to legislate than the board itself possesses." (*City and County of San Francisco v. Patterson* (1988) 202 Cal.App.3d 95, 104.) The Associations argue from this principle that the electorate, like the Board of Supervisors, cannot impose special taxes without the concurrence of two-thirds of the voters. But the Charter imposes a substantive limit on the initiative power; it does not import into the initiative process any procedural limitation on Board action, such as the supermajority vote requirements of Article XIII A, section 4 or Article XIII C, section 2(d).

The Associations mischaracterize the supermajority vote requirement as a substantive limitation on lawmaking authority, citing an Illinois case that is factually distinguishable and would not be controlling in any event. (*Bank of Elk Grove v. Joliet* (Ill.Ct.App. 1988) 525 N.E. 2d 569, 570–571.) California law is to the contrary, as clearly spelled out in the cases we have already considered. Under *Kennedy Wholesale*, the general rule that the voters' lawmaking power is coextensive with the Legislature's power does not extend to "legislative procedures, such as voting requirements" which "cannot reasonably be assumed to apply to the electorate without evidence that such was intended." (*Kennedy Wholesale, supra*, 53 Cal.3d at pp. 251–252.) The same point was made just as clearly in *California Cannabis*. (*California Cannabis, supra*, 3 Cal.5th at p. 942 ["where legislative bodies retain lawmaking authority subject to procedural limitations" including "two-thirds

26

vote requirements [citation], we presume such limitations do not apply to the initiative power absent evidence that such was the restrictions' intended purpose"].)  Because the Associations point to no evidence that the Charter intends procedural limitations on the Board of Supervisors' legislative powers to apply to local initiatives, their challenge under the Charter fails.

For all these reasons, we conclude that passage of Proposition C pursuant to a majority vote of the City's electorate was a valid exercise of the people's initiative power.

## DISPOSITION

The judgment is affirmed.

_____
TUCHER, J.

WE CONCUR:


_____
STREETER, Acting P. J.


_____
BROWN, J.

| | |
|---|---|
| Trial Court: | City & County of San Francisco Superior Court |
| Trial Judge: | Hon. Ethan P. Schulman |
| Counsel for Appellants: | Nielsen Merksamer Parrinello Gross & Leoni LLP, James R. Parrinello, Chripher E. Skinnell, by Court-Appointment under the First District Appellate Project |
| Counsel for Amicus Curiae on behalf of Appellants: | Council on State Taxation: Eversheds Sutherland (US) LLP; Timohty A. Gustafson, Eric J. Coffill |
| Counsel for Amicus Curiae on behalf of Appellants: | Greenberg Traurig, LLP, Bradley R. Marsh, Colin W. Fraser |
| Counsel for Respondents: | Dennis J. Herrera, City Attorney; Wayne K. Snodgrass, Deputy City Attorney |
| Counsel for Amicus Curiae on behalf of Respondents: | Our City Our Home: Law Offices of Jeffrey Sinsheimer, PC, Jeffrey Sinsheimer; and Kirsch & Jansen LLP, Paul F. Kirsch |
| Counsel for Amicus Curiae on behalf of Respondents | Margot Kushel, Cynthia Nagendra |