Filed 12/30/20 (unmodified opn. attached)

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF FRESNO,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FRESNO BUILDING HEALTHY COMMUNITIES,<br><br>    Defendant and Appellant,<br><br>HOWARD JARVIS TAXPAYER ASSOCIATION,<br><br>    Intervener and Respondent. | F080264<br><br>(Super. Ct. No. 19CECG00422)<br><br><br>**MODIFICATION OF OPINION ON DENIAL OF REHEARING [NO CHANGE IN JUDGMENT]** |
| FRESNO BUILDING HEALTHY COMMUNITIES,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CITY OF FRESNO,<br><br>    Defendant and Respondent,<br><br>HOWARD JARVIS TAXPAYER ASSOCIATION,<br><br>    Intervener and Respondent. | F080265<br><br>(Super. Ct. No. 19CECG00432) |

**THE COURT:**

It is ordered that the opinion herein filed on December 17, 2020, be modified as follows:

1. On page 19, delete the entire paragraph that begins with the sentence "First, Elections Code section 9217 is not specific to voter initiatives." and insert the following paragraph in its place:

> The trial court places undue significance on *California Cannabis's* reference to Elections Code section 9217 (section 9217). Section 9217 provides in relevant part: "If a majority of the voters voting on a proposed ordinance vote in its favor, the ordinance shall become a valid and binding ordinance of the city. … No ordinance that is either proposed by initiative petition and adopted by the vote of the legislative body of the city without submission to the voters, or adopted by the voters, shall be repealed or amended except by a vote of the people, unless provision is otherwise made in the original ordinance." Section 9217 is found under the chapter of the Elections Code governing municipal initiatives and is hence specific to initiatives, as the trial court observes. However, we disagree that the Supreme Court's reference in *California Cannabis* to section 9217 means the two-thirds vote requirement applies to voter initiatives. There is no indication the Court in that passage was trying to formulate an interpretation of the vote requirement for a special tax measure proposed by a local governing body. Instead, the Court was explaining that if the voters desired to impose a certain procedural requirement on themselves, they would have done so expressly. Additionally, in the sentence immediately prior to the one referencing section 9217, the Court stated a two-thirds vote of the voters was required "before *a local government* can impose" a special tax; there was no reference to special taxes imposed by voter initiative.

> This modification does not effect a change in the judgment.

> Intervener's petition for rehearing is denied.


SNAUFFER, J.

WE CONCUR:


FRANSON, Acting P.J.


PEÑA, J.

2.

Filed 12/17/20 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF FRESNO, | F080264 |
| Plaintiff and Respondent, | (Super. Ct. No. 19CECG00422) |
| v. | |
| FRESNO BUILDING HEALTHY COMMUNITIES, | **OPINION** |
| Defendant and Appellant; | |
| HOWARD JARVIS TAXPAYER ASSOCIATION, | |
| Intervener and Respondent. | |
| FRESNO BUILDING HEALTHY COMMUNITIES, | F080265 |
| Plaintiff and Appellant, | (Super. Ct. No. 19CECG00432) |
| v. | |
| CITY OF FRESNO, | |
| Defendant and Respondent; | |
| HOWARD JARVIS TAXPAYER ASSOCIATION, | |
| Intervener and Respondent. | |

APPEAL from judgments of the Superior Court of Fresno County.  Kimberly A. Gaab, Judge.

Olson Remcho, Thomas A. Willis, Karen Getman and Benjamin N. Gervercer for Defendant and Appellant in F080264 and Plaintiff and Appellant in F080265.

No appearance for Plaintiff and Respondent in F08264 and Defendant and Respondent in F080265.

Jonathan M. Coupal, Timothy A. Bittle and Laura E. Dougherty for Intervener and Respondent.

Eversheds Sutherland (US), Timothy A. Gustafson, Eric J. Coffill and Alexandra Louderback for Council for State Taxation as Amicus Curiae on behalf of Intervener and Respondent.

-ooOoo-

In the November 2018 general election, 52.17% of Fresno voters voted for Measure P, a voter initiative measure entitled the "Fresno Clean and Safe Neighborhood Parks Tax Ordinance."[1]  The City of Fresno (the City) filed a complaint for declaratory relief to establish whether Measure P has been duly enacted through the voters' initiative power.  The City's complaint named as defendant Fresno Building Healthy Communities (FBHC), a nonprofit corporation that supported Measure P, and the Howard Jarvis Taxpayers Association (the Association) also intervened as a defendant.  The same day the City filed its action, FBHC filed its own complaint for declaratory relief and petition for writ of mandate, seeking a declaration Measure P had been duly enacted.  The City was named as the respondent and the Association intervened, and each filed an answer to FBHC's action.

---

[1] California Constitution, Article II, section 1 provides in part:  "All political power is inherent in the people," who retain "the right to alter or reform" government by voter initiative "when the public good may require."

2.

The Association filed a motion for judgment on the pleadings in the City's action, arguing Measure P is invalid because it imposed a special tax approved by less than two-thirds of the voting electorate. The Association relied on provisions placed in the California Constitution by Proposition 13 (in 1978) and Proposition 218 (in 1996), "which both require a two-thirds vote of the electorate to approve certain taxes adopted by local governments." (*City and County of San Francisco v. All Persons Interested in the Matter of Proposition C* (2020) 51 Cal.App.5th 703, 708, review denied Sept. 9, 2020, S263753 (*All Persons*); see Cal. Const., Art. XIII A, § 4 & Art. XIII C, § 2, subd. (d).)[2] The trial court granted the Association's motion for judgment on the pleadings without leave to amend, agreeing with the Association that the relevant provisions of Proposition 13 and Proposition 218 require a two-thirds vote of the electorate for passage of a voter initiative that imposes a special tax. Judgment was entered in the City's action, and the parties stipulated and the superior court ordered that its ruling in the City's case be incorporated into a final judgment in FBHC's case. FBHC appeals from both judgments. As both cases involve the same parties, facts, and legal issues, we have consolidated the cases.

After FBHC filed its opening brief, the First District Court of Appeal filed its opinion in *All Persons, supra,* 51 Cal.App.5th 703. There, the First District was presented exactly the same questions presented here, namely, whether Proposition 13 and Proposition 218 require a two-thirds vote of the electorate for passage of a voter initiative that imposes a special tax. In that case, the City and County of San Francisco filed a petition for declaratory relief asking for a determination that a special tax initiative that received 61 percent of the vote be declared passed. (*All Persons, supra,* 51 Cal.App.5th at p. 708.) The trial court granted the City and County of San Francisco's motion for judgment on the pleadings, and the First District affirmed. (*Id*. at pp. 708-709.) The First

_____

[2] Unspecified references to "Article" are to the California Constitution.

3.

District ultimately concluded neither Proposition 13 nor Proposition 218 affects the voters' initiative power, and therefore neither imposes a two-thirds voting requirement on the passage of voter initiatives that impose special taxes. (*Ibid.*) We fully agree with and endorse the holdings and reasoning of *All Persons*, and find that case controls the outcome here. We reverse, and in doing so we quote liberally from *All Persons*.

## CONSTITUTIONAL BACKGROUND

The *All Persons, supra,* 51 Cal.App.5th 703 court began by providing an overview of the provisions of Proposition 13 and Proposition 218 that were at issue in that case, which are the same issues presented in this case. We present that overview here to provide a helpful backdrop for reading the facts:[3]

### I.    The Initiative Power

Our state Constitution was amended in 1911 to include the initiative power. (*California Cannabis* [*Coalition v. City of Upland* (2017) 3 Cal.5th 924, 934 (*California Cannabis*)].) "The Constitution 'speaks of the initiative and referendum, not as a right granted the people, but as a power reserved by them.' " (*Ibid*; see Art. IV, § 1.)

Article II describes the initiative as "the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them" (Art. II, § 8), and states that this power "may be exercised by the electors of each city or county under procedures that the Legislature shall provide" (Art. II, § 11). "[A]lthough the procedures for exercise of the right of initiative are spelled out in the initiative law, the right itself is guaranteed by the Constitution." (*Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 594–595 (*Associated Home Builders*) [affording greater weight to initiative law than zoning law].)

---

[3] In quoting from the *All Persons* opinion, 51 Cal.App.5th at pages 709-711, the brackets enclosing material are used to denote our insertions or additions.

A defining characteristic of the initiative is the people's power to adopt laws by majority vote. As originally enacted, the 1911 constitutional amendment provided: "Any act, law or amendment to the constitution submitted to the people by either initiative or referendum petition and approved by a majority of the votes cast thereon at any election shall take effect five days after the date of the official declaration of the vote by the secretary of state." (Former Art. IV, § 1.) To similar effect, state legislation providing for passage of a local initiative measure upon majority vote was first enacted in 1912. (Stats. 1912, 1st Ex. Sess. 1911, ch. 33, p. 131; see *Brookside Investments, Ltd. v. City of El Monte* (2016) 5 Cal.App.5th 540, 550.)

Currently, Article II, section 10, subdivision (a) provides that an "initiative statute … approved by a majority of votes cast thereon takes effect on the fifth day after the Secretary of State files the statement of the vote for the election at which the measure is voted on." Parallel legislation for local initiatives is found in the Elections Code; section 9217 provides that "if a majority of the voters voting on a proposed ordinance vote in its favor, the ordinance shall become a valid and binding ordinance of the city." And section 9122 has a parallel provision for "a majority of the voters … of the county." [fn. omitted.]

The initiative power is " 'one of the most precious rights of our democratic process' [citation]. '[It] has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled." (*Associated Home Builders, supra,* 18 Cal.3d at p. 591.) Pursuant to our duty to " ' "jealously guard" ' and liberally construe" this right, we must "resolve doubts in favor of the exercise of the right whenever possible." (*California Cannabis, supra,* 3 Cal.5th at p. 934.)

## II. Restrictions on the Government's Power to Tax

Over the past four decades, restrictions on the government's taxing power have been added to the California Constitution by a series of voter initiatives "designed to limit

the authority of state and local governments to impose taxes without voter approval." (*Citizens for Fair REU Rates v. City of Redding* (2018) 6 Cal.5th 1, 10 (*Citizens for Fair REU Rates*).) Two of those measures added the supermajority vote requirements at issue in the present case: Proposition 13 in 1978, and Proposition 218 in 1996.

Proposition 13 "added article XIII A to the state Constitution 'to assure effective real property tax relief by means of an "interlocking 'package' " ' of four provisions." (*Citizens for Fair REU Rates, supra,* 6 Cal.5th at p. 10.) The first two of these four provisions are not directly relevant here. They "capped the ad valorem real property tax rate at 1 percent (art. XIII A, § 1)" and "limited annual increases in real property assessments to 2 percent (art. XIII A, § 2)." (*Citizens for Fair REU Rates*, at p. 10.) The third provision "required that any increase in statewide taxes be approved by two-thirds of both houses of the Legislature." (*Ibid.*, citing Art. XIII A, § 3.) This was the provision our Supreme Court construed in *Kennedy Wholesale*[*, Inc. v. State Bd. of Equalization* (1991) 53 Cal.3d 245 (*Kennedy Wholesale*)]. The fourth provision, the one at issue in this case, requires "that any special tax imposed by a local government entity be approved by two-thirds of the qualified electors (Art. XIII A, § 4)." (*Citizens for Fair REU Rates*, at p. 10.)

Eighteen years after Proposition 13, Proposition 218 "added articles XIII C and XIII D to the state Constitution." (*Citizens for Fair REU Rates, supra,* 6 Cal.5th at p. 10.) Article XIII D further limits the authority of local governments to assess real property taxes and charges. And "[a]rticle XIII C buttresses article XIII D by limiting the other methods by which local governments can exact revenue using fees and taxes not based on real property value or ownership." (*Citizens for Fair REU Rates, supra,* 6 Cal.5th at p. 10.) Article XIII C categorizes all local taxes as " 'either general taxes or special taxes' (Art. XIII C, § 2, subd. (a))," and provides, "[l]ocal governments may not impose, increase, or extend: (1) any general tax, unless approved by a majority vote at a general election; or (2) any special tax, unless approved by a two-thirds vote. (Art. XIII

6.

C, § 2, subds. (b), (d).)" (*Citizens for Fair REU Rates*, at pp. 10–11.)  The Supreme Court in *California Cannabis* construed the general tax restriction in subdivision (b) of Article XIII C, section 2 (section 2(b)), while this case concerns the special tax restriction in subdivision (d) of the same section (section 2(d)).  [We end our quotation from *All Persons, supra,* 51 Cal.App.5th at pages 709—711.]

**FACTUAL AND PROCEDURAL BACKGROUND**

In early 2018, citizens of the City of Fresno circulated an initiative petition seeking to place the "Fresno Clean and Safe Neighborhood Parks Tax Ordinance" on a future City election ballot.  The proposed ordinance sought to impose a 3/8 percent transaction and use tax (i.e., sales tax) to improve park safety and accessibility for persons with disabilities, update and maintain playgrounds and restrooms, provide youth and veteran job training, improve after-school, arts, and recreation programs, beautify roadways, and create parks and trails in neighborhoods without current access.

The proponents submitted the petition to the City and the City Clerk determined it contained 27,263 valid signatures of City voters, sufficient to qualify it for placement on the election ballot.  At the same time, the Fresno City Council considered placing its own sales tax measure, the "Parks and Public Safety Transactions and Use Tax," sponsored by the mayor of Fresno, on the ballot.  As a local government-proposed tax measure, the "Parks and Public Safety Transactions and Use Tax" noted its passage was "subject to approval by two-thirds of the electorate under Proposition 218."  However, this proposal was removed from the June 28, 2018, city council meeting agenda.

On August 9, 2018, the city council exercised its mandatory and ministerial duty to place the citizens' proposed measure on the November 6, 2018, general election ballot. The initiative was designated as Measure P, and the city council's resolution submitting it

to the voters stated that a two-thirds vote of the electorate was required for passage.[4]  At the election, a majority of those voting—52.17 percent—voted to approve Measure P. On December 18, 2018, the Fresno City Council determined Measure P failed because two-third of the electorate had not approved it.

On February 1, 2019, the City filed a complaint for declaratory relief in Fresno County Superior Court requesting a determination of the voter threshold required for passage of a special tax brought by voter initiative.[5]  The City named as the defendant FBHC, which had supported Measure P and had sent a letter to the City requesting the City take steps to implement Measure P.  FBHC is a California nonprofit corporation, and was founded by residents of Fresno to foster and encourage thriving communities where all children and families can live healthy, safe, and productive lives.  On February 26, 2019, the Association was granted leave to intervene as a defendant.  FBHC and the Association each filed answers to the City's complaint, and FBHC also filed a response to the Association's answer.

Also on February 1, 2019, FBHC filed its own complaint for declaratory relief and verified petition for writ of mandate in Fresno County Superior Court requesting a declaration Measure P had been validly enacted and a directive to the City to implement it.  The City was named as the respondent, Association intervened, and both filed an answer.

Thereafter, the Association moved for judgment on the pleadings in the City's action, arguing that articles XIII A and XIII C of the California Constitution require approval of two-thirds of the electorate and that this two-thirds approval requirement applies equally to tax measures proposed by voter initiative, including Measure P.  The

---

[4] We take judicial notice on our own motion of Fresno City Council Resolution No. 2018-188 dated August 10, 2018.  (Evid. Code, § 459, subd. (a).)

[5] The parties do not dispute the tax Measure P seeks to impose is a special tax, as opposed to a general tax.

8.

City submitted a statement of neutrality and indicated it would defer to the court's guidance. FBHC opposed the motion.

On August 14, 2019, the trial court held a hearing on the Association's motion and took the matter under submission. On September 5, 2019, the court granted the motion for judgment on the pleadings without leave to amend. Judgment was entered in the City's action, and the parties stipulated that that judgment be incorporated into a final judgment in the case initiated by FBHC. In its written order, the trial court concluded Propositions 13 and 218 each impose a supermajority voting requirement on voter initiatives. Concerning Proposition 13, the trial court relied on *Kennedy Wholesale, supra,* 53 Cal.3d 245, and *Altadena Library Dist. v. Bloodgood* (1987) 192 Cal.App.3d 585 (*Altadena Library*), two cases that the trial court believed stood for the proposition that the voters, via article XIII A, section 4, imposed a two-thirds voting requirement on themselves for passage of special tax initiatives. We believe the trial court reached the wrong conclusion.

Regarding Proposition 218, FBHC relied on *California Cannabis, supra,* 3 Cal.5th 924 to support its contention that the two-thirds voting requirement contained in article XIII C, section 2(d) does not apply to voter initiatives. The trial court distinguished *California Cannabis* on the ground that that case was decided within the narrow context of a different section of Article XIII C, and therefore is inapposite. The trial court in turn concluded, by implication, that the term "local government" as used in article XIII C, section 2(d) includes the electorate. Again, the trial court incorrectly concluded the electorate is included in the term "local government."

**DISCUSSION**

**I.      Standard of Review**

FBHC contends that it, rather than the Association, is entitled to judgment on the pleadings. The Association is supported by amicus curiae. "Judgment on the pleadings ' "is equivalent to a demurrer." ' [Citation.] We derive the pertinent facts from properly

9.

pleaded allegations in the challenged pleading and judicially noticeable matters and our standard of review is de novo. [Citation.] [¶] De novo review is proper for the additional reason that we are called upon to construe constitutional provisions. [Citation.] In undertaking this task, our objective is to give effect to the intended purpose of these provisions. We begin with the text, ascribing to words their ordinary meaning and considering their context by taking account of related provisions and the broader constitutional scheme. If a provision's intended purpose cannot be gleaned from the text in context, then we may consider extrinsic sources. And, as to provisions enacted through voter initiative, we presume electors are aware of existing law." (*All Persons, supra,* 51 Cal.App.5th at pp. 713-714, fn. omitted.)

## II.     Proposition 13 (Article XIII A, Section 4)

The trial court ruled that under Proposition 13 and the holdings of *Kennedy Wholesale, supra,* 53 Cal.3d 245 and *Altadena Library, supra,* 192 Cal.App.3d 585, a two-thirds vote of the electorate is required for passage of an initiative measure imposing a special tax. Specifically, the trial court, relying on a quotation from our Supreme Court's holding in *Kennedy Wholesale*, ruled that Article XIII A, section 4 imposes a two-thirds voting requirement on the electorate for passage of such a measure. The trial court also stated in its ruling that the *Altadena Library* court held that the two-thirds vote requirement of Article XIII A, section 4 applies to initiative measures. We believe the trial court erred in concluding Article XIII A, section 4 applies to voter initiatives.

The First District in *All Persons, supra,* 51 Cal.App.5th 703 answered the same question presented here, namely, whether Article XIII A, section 4 applies to voter initiatives. In answering the question in the negative, the First District explained how neither *Kennedy Wholesale, supra,* 53 Cal.3d 245—including the specific quotation therefrom relied on by the trial court in our case—nor *Altadena Library, supra,* 192 Cal.App.3d 585 lend support to the proposition that Article XIII A, section 4 applies to initiatives. We fully agree with the First District's holding and reasoning.

10.

"The text of Article XIII A, section 4 states that 'Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes,' except for taxes relating to the value, possession, or sale of real property.' " (*All Persons, supra,* 51 Cal.App.5th at p. 714.)  The First District recognized a "source of potential ambiguity is the phrase 'Cities, Counties, and special districts." (*Ibid.*)

One interpretation "of section 4's language is that these elected bodies 'may impose special taxes' only if two-thirds of the voters also approve." (*All Persons, supra,* 51 Cal.App.5th at p. 714.)  By this interpretation, the electorate "is distinct from and not included in the phrase 'Cities, Counties, and special districts.' " (*Ibid.*)  A second interpretation—urged by the Association here—is that section 4's "reference to 'cities' and 'counties' includes the electorate in these jurisdictions." (*Ibid.*)  "According to this interpretation, the people, in exercising their initiative power, are required also to muster a two-thirds vote to enact a special tax, even though there is no express mention of the initiative power." (*Ibid.*)

The First District recognized both interpretations are plausible "when reading section 4 in isolation." (*All Persons, supra,* 51 Cal.App.5th at p. 715.)  "Facing ambiguous context, [the First District] turn[ed] to context to interpret section 4, starting with other provisions of the California Constitution." (*Ibid.*; citing *California Cannabis, supra,* 3 Cal.5th at pp. 933-934.)  The court began by noting that no provision in Article III A, including section 4, mentioned the initiative power. (*All Persons, supra,* at p. 715.)  The court continued:  "When Proposition 13 was approved by California voters in 1978, the initiative power had been long ensconced in our Constitution. (*California Cannabis, supra,* 3 Cal.5th at p. 934.) 'Initiatives, whether constitutional or statutory, require only a simple majority for passage.' (*Kennedy Wholesale, supra,* 53 Cal.3d at p. 250.)" (*All Persons, supra,* at p. 715.)  The court then posed the question:  "If the voters who approved Proposition 13 (by a majority vote) intended to constrain the constitutionally protected power of future voters to approve initiatives by majority vote,

11.

would they not have manifested that intent by some express reference to the initiative power?" (*Ibid.*)

Responding to that rather rhetorical question, the First District stated: "[W]e are not the first court to grapple with Proposition 13's silence on the initiative power. Our state Supreme Court in *Kennedy Wholesale, supra,* 53 Cal.3d 245, first rejected an argument that another provision of Proposition 13—section 3 of Article XIII A— impliedly repealed the people's power to increase state taxes by voter initiative, and then interpreted section 3's two-thirds vote requirement as inapplicable to statewide initiative statutes. The approach to constitutional interpretation and the result reached in *Kennedy Wholesale* compel our conclusion that the two-thirds vote requirement in section 4 does not apply to local initiatives." (*All Persons, supra,* 51 Cal.App.5th at p. 715.)

"*Kennedy Wholesale* was a constitutional challenge to Proposition 99, a 1988 initiative statute that increased state taxes on tobacco products. [Citation.] Plaintiff, a tobacco product distributor, argued that Proposition 99 violated Article XIII A, section 3, which at the time provided, 'any changes in State taxes enacted for the purpose of increasing revenues … must be imposed by an Act passed by not less than two-thirds of all members elected to each of the two houses of the Legislature.' [Citation.] According to the plaintiff, a plain reading of this provision signified that 'only the Legislature can raise taxes.' [Citation.] The *Kennedy Wholesale* Court recognized that section 3 was susceptible to that interpretation because, read literally, section 3 required that any state tax increases ' "*be imposed by … the Legislature.*" ' [Citation.] Yet the Court found the provision 'ambiguous when read in the context of the whole Constitution,' particularly those provisions preserving the initiative power. [Citation.] The *Kennedy Wholesale* Court resolved this contextual ambiguity on the basis of three factors that apply in our case." (*All Persons, supra,* 51 Cal.App.5th at p. 715.)

"First is the general principle that ' "the law shuns repeals by implication." ' [Citation.] To interpret Article XIII A, section 3 as giving the Legislature exclusive

12.

power to raise taxes would have impliedly repealed the initiative power reserved to the people in Article IV, section 1, despite the fact that section 3 did 'not even mention the initiative power, let along purport to restrict it.' [Citation.] *Kennedy Wholesale* refused to construe section 3 in this manner, reminding courts of our obligation to harmonize, whenever possible, potentially conflicting constitutional provisions." (*All Persons, supra,* 51 Cal.App.5th at pp. 715-716.) The *All Persons* court, abiding by this principle, "decline[d] to construe section 4 in a manner that repeals by implication the initiative power to pass local laws by majority vote." (*Id.* at p. 716.) We agree with *All Persons* that Proposition 13 fails to even mention "the constitutionally-backed requirement in the Election Code that a local initiative measure take effect when it garners a majority of votes cast." (*All Persons, supra,* 51 Cal.App.5th at p. 716.)

The *All Persons* court proceeded: "The second principle of construction applied in *Kennedy Wholesale* is specific to citizen initiatives. Calling the power of initiative, ' " ' "one of the most precious rights of our democratic process," ' " ' the Supreme Court declined to adopt an interpretation of section 3 that would limit the initiative power: 'we must "*resolve any reasonable doubts in favor of the exercise of this precious right*," ' *Kennedy Wholesale* instructs. (*Kennedy Wholesale, supra,* 53 Cal.3d at p. 250.) Applying that principle here, we will reject a construction of Article XIII A, section 4 that hobbles the exercise of the initiative power by lashing it to a supermajority vote requirement." (*All Persons, supra,* 51 Cal.App.5th at p. 716.)

The third relevant factor under *Kennedy Wholesale* that the First District Court recognized "considers evidence bearing on the meaning of the text in question." (*All Persons, supra,* 51 Cal.App.5th at p. 716.) The *Kennedy Wholesale* court considered the official ballot pamphlet as evidence of the intent of the voters who passed Proposition 13. (*Ibid*.) The *Kennedy Wholesale* court found no evidence in the pamphlet to " 'support[] the inference that the voters intended to limit their own power to raise taxes in the future by statutory initiative.' " (*All Persons, supra,* 51 Cal.App.5th at p. 716; quoting *Kennedy*

13.

*Wholesale, supra,* 53 Cal.3d at p. 250.)  Instead, the Supreme Court noted "Proposition 13 was directed against ' "spendthrift politicians" ' and in favor of restoring ' "government of, for and by the people," ' " and this theme is inconsistent with the notion that voters enacted Proposition 13 to limit their own power to raise taxes by initiative.  (*All Persons, supra,* 51 Cal.App.5th at p. 716; quoting *Kennedy Wholesale, supra,* 53 Cal.3d at pp. 250-251.)

The *All Persons* court correctly recognized that "[n]one of the evidence *Kennedy Wholesale* cites is specific to section 3, as distinct from section 4, of Article XIII A."  (*All Persons, supra,* 51 Cal.App.5th at p. 716.)  The trial court here therefore erred in suggesting *Kennedy Wholesale* is inapplicable because it was decided in the context of section 3.  Like the *All Persons* court, "we find in the official ballot pamphlet nothing to support an inference that the voters adopting Proposition 13 intended to limit their own ability to raise local taxes by initiative, and to adopt such initiatives by majority vote." (*All Persons, supra,* 51 Cal.App.5th at p. 716.)  Therefore, we likewise conclude an analysis of each of the three foregoing factors compels a conclusion that the two-thirds vote requirement codified in Article XIII A, section 4 does not apply to local citizens' initiatives.

We next address another aspect of *Kennedy Wholesale.*  The trial court, in its order granting the Association's motion for judgment on the pleadings, stated:

> "The California Supreme Court noted, in *Kennedy Wholesale, Inc. v. State Bd. Of Equalization* (1991) 53 Cal.3d 245, that article XIII A, section 4's two-thirds vote requirement 'demonstrates, unambiguously, that the voters knew how to impose a supermajority vote requirement upon themselves when that is what they wanted to do.'  (*Id*. at p. 252.) Article XIII A, section 4 was referenced in contrast to article XIII A, section 3:  'That the voters *expressly* adopted such a requirement in section 4 strongly suggests that they did not do so *implicitly* in section 3.'  (*Ibid*., emphasis in original.)"

14.

This quotation was also used by the appellants in *All Persons*—as well as by the Association here—"to argue that Article XIII A, section 4 applies to voter-circulated initiatives." (*All Persons, supra,* 51 Cal.App.5th at p. 718.)  However, the Association has misconstrued what the *Kennedy Wholesale* court said.  "The Court simply acknowledged section 4's two-thirds vote requirement that applies when local government entities—'Cities, Counties, or special districts'—seek to impose special taxes.  The Court did not say or suggest that the same requirement applies to local initiatives." (*All Persons, supra,* at p. 718.)

The trial court and the Association also both rely on *Altadena Library, supra,* 192 Cal.App.3d 585.  That case "involved a 1983 ballot initiative that would have authorized the Altadena Library District to levy a special parcel tax to offset losses resulting from the passage of Proposition 13.  The measure was approved by 64.8 percent of the district's voters, but the county controller refused to levy the new tax because the measure did not satisfy Proposition 13's supermajority vote requirement, which he took to apply.  [Citation.]  The Library District and its supporters sought mandate relief, which was denied.  On appeal, they argued that (1) the Library District was not a special district within the meaning of Article XIII A, section 4, and (2) applying the supermajority vote requirement to a library district that provides constitutionally protected educational services violates equal protection.  [Citation.]  The Court of Appeal rejected both contentions and affirmed the judgment." (*All Persons, supra,* 51 Cal.App.5th at p. 719.)

The Association here, just like the appellants in *All Persons*, argues the *Altadena Library* court held the two-thirds vote requirement codified in Article XIII A, section 4, applies to voter initiatives.  The Association is incorrect.  The court there did not address the question of whether section 4's supermajority vote requirement applies to voter initiatives.  Rather, the appellants in that case "limited their appeal to the question whether the supermajority vote requirement could be constitutionally applied to a library district[, and] never argued that the voters had validly exercised their initiative power

15.

when they approved the measure by a majority vote, so that issue was not before the court." (*All Persons, supra,* 51 Cal.App.5th at p. 719.) " 'Opinions are not authority for propositions not considered.' " (*Ibid.*) Indeed, the *Altadena Library* court stated that its " 'opinion is confined to the specific constitutional issue the library supporters raised,' not purporting to decide "every other constitutional challenge which might be lodged against the supermajority requirement in art. XIII A, section 4." (*All Persons,* at p. 719, quoting *Altadena Library, supra,* 192 Cal.App.3d at p. 592, fn. 1.)

Following the sound reasoning of the *All Persons* court's resolution of the controlling issues, we conclude the trial court here erred in concluding Proposition 13 imposes a supermajority voting requirement on the electorate for passage of voter initiatives.

## III.    Proposition 218 (Article XIII C, Section 2)

Separately, the trial court concluded Measure P is invalid under Article XIII C, section 2(d), which was added to the state constitution by Proposition 218. That section reads in full: "No local government may impose, extend or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote." The trial court concluded that this provision imposes a two-thirds vote requirement on all measures that seek to impose special taxes, regardless if the measure originates from a voter initiative or from a governing body. On appeal, the Association defends the trial court's ruling by arguing that the term "local government," as used in section 2(d), should be construed to include the electorate. However, the *All Persons* court has squarely addressed this issue as well, and correctly arrived at the conclusion that the term "local government" does not include the electorate, and that section 2(d) does not apply to voter initiatives.

The Association here, as did the appellants in *All Persons, supra,* 51 Cal.App.5th at p. 722, "contend[s] that the term 'local government' in section 2(d) is broad enough to include voters exercising their initiative power, so that initiatives imposing a special tax

require a two-thirds vote.  Article XIII C, section 1 defines ' "Local government" ' to mean 'any county, city, city and county, including a charter city or county, any special district, or any other local or regional government entity.' " (*All Persons, supra,* 51 Cal.App.5th at p. 722.)  Obviously, this definition, which is the only definition of "local government" applicable to the entirety of Article XIII C, does not reference the electorate.  "This definition also contains a catch-all for 'other … governmental entit[ies],' which only strengthens the City's argument that 'local government' refers to constituted governmental entities, not to the electorate exercising its initiative power." (*All Persons, supra,* 51 Cal.App.5th at p. 722.)

More importantly, the California Supreme Court in *California Cannabis, supra,* 3 Cal.5th 924 has already determined that "local government"—which, again, has only one enumerated definition applicable to the whole of Article XIII C—does not include the electorate.  (See *All Persons, supra,* 51 Cal.App.5th at p. 722.)  "*California Cannabis* involved a 2014 voter initiative to repeal a citywide ban on medical marijuana dispensaries and impose licensing and inspection fees on dispensaries.  [Citation.] Proponents of the initiative requested that it be placed before voters at a special election, but the City determined the initiative had to await the next general election ballot because the licensing and inspection fee was a general tax under Article XIII C, section 2. [Citation.]  The initiative proponents filed a mandate petition, arguing, inter alia, that Article XIII C did not apply to voter initiatives.  While the case was pending, the medical marijuana initiative was defeated in a general election, but the Supreme Court exercised discretion to decide the case because of 'important questions of continuing public interest that may evade review.' " (*All Persons,* at p. 722.)

"The *California Cannabis* court framed the dispositive issue as whether Article XIII C restricts the ability of voters to impose taxes via initiative." (*All Persons, supra,* 51 Cal.App.5th at p. 723.)  The high court ultimately found:  " 'nothing in the text of article XIII C, or its context, supports the conclusion that the term "local government"

17.

was meant to encompass the electorate.' " (*All Persons, supra,* 51 Cal.App.5th at p. 723; quoting *California Cannabis,* at pp. 936 & 946-947.)  The Association contends that *California Cannabis* is inapplicable to our case because, while voters may not be "local government" for purposes of determining whether a general tax must be submitted to voters at a general election (Article XIII C, section 3), they are "local government" for purposes of applying the supermajority vote requirement.  Unsurprisingly, the appellants in *All Persons* raised this exact argument, and the *All Persons* court succinctly and accurately disposed of the faulty contention thusly:  "Sections 2(b) and 2(d) are found in the same article and section of the state Constitution.  They were both added by Proposition 218.  They employ parallel language and incorporate the exact same definition of local government set forth in Article XIII C, section 1.  The *California Cannabis* Court held that the definition of 'local government' in Article XIII C, section 2 of the Constitution is not 'broad enough to include the electorate.'  (*California Cannabis, supra,* 3 Cal.5th at p. 937.)  That holding applies here."  (*All Persons, supra,* 51 Cal.App.5th at p. 723.)  In short, the California Supreme Court, in *California Cannabis*, has already determined the meaning of "local government" for all purposes of Article XIII C, and we are bound by its determination.

Notwithstanding, the Association, like the *All Persons* appellants, attempts to distinguish *California Cannabis* by seizing on the fact that section 2(b) is materially different from section 2(d) because in section 2(d) voters explicitly imposed a two-thirds vote requirement on themselves.  The trial court also attempted to make the same distinction.  The trial court relied on the following quotation from *California Cannabis*:

> "[A]s we observed in *Kennedy Wholesale,* 53 Cal.3d at page
> 252, 279 …, when an initiative's intended purpose includes
> imposing requirements on voters, evidence of such a purpose
> is clear.  In article XIII C, section 2, subdivision (d), for
> example, the enactors adopted a requirement providing that,
> before a local government can impose, extend, or increase
> any special tax, voters must approve the tax by a two-thirds

18.

vote. That constitutes a higher vote requirement than would otherwise apply. ([Elec. Code,] § 9217 [providing for a majority].) That <u>the voters explicitly imposed a procedural two-thirds vote requirement on themselves in article XIII C, section 2, subdivision (d)</u> is evidence that they did not implicitly impose a procedural timing requirement in subdivision (b)." ([*California Cannabis, supra,* 3 Cal.5th] at p. 943, underlining added by trial court.)

The trial court continued:

"In the above-referenced provision, the Court refers to Elections Code section 9217, a statute specific to local voter *initiatives*, and which provides that such initiatives pass with a simple majority vote. Thus, it appears that the Court was referring to initiatives, then, when it stated that, under article XIII C, section 2, subdivision (d), voters must approve special taxes 'by a two-thirds vote' and such 'constitutes a higher vote requirement than would otherwise apply' pursuant to Elections Code section 9217. The two-thirds vote requirement applies to all special tax proposals, regardless of the proponent of the proposal."

First, Elections Code section 9217 is not specific to voter initiatives. That section provides in relevant part: "If a majority of the voters voting on a proposed ordinance vote in its favor, the ordinance shall become a valid and binding ordinance of the city. … No ordinance that is either proposed by initiative petition and adopted by the vote of the legislative body of the city without submission to the voters, or adopted by the voters, shall be repealed or amended except by a vote of the people, unless provision is otherwise made in the original ordinance."

More fundamentally, given that the term "local government" in Article XIII C does not include the voting electorate and that the *California Cannabis* court found no evidence from the official ballot materials that Proposition 218 was intended to affect the voters' power of initiative, the trial court's above-quoted provision does not stand for the proposition that a supermajority voting requirement applies to voter initiatives. (*California Cannabis, supra,* 3 Cal.5th at p. 940.)

19.

" 'Proposition 218 simply extends the long standing constitutional protection against politicians imposing tax increases without voter approval.' [Citation.] It does not constrain the people's initiative power." (*All Persons, supra,* 51 Cal.App.5th at p. 724.)

## IV. Policy argument

Aside from its constitutionally based arguments, the Association also contends that our failing to construe Propositions 13 and 218 as imposing a supermajority voting requirement on voter initiatives would create a playground for mischief. It contends that local politicians who support a tax increase could qualify an initiative as private citizens and then, when the initiative comes before the local governing body, they could enact the measure without putting it on the ballot, as would be allowed by Elections Code section 9215, subdivision (a). Elections Code section 9215 provides that a city must do one of the following when it receives a valid initiative petition: "(a) Adopt the ordinance as passed, without alteration, at the regular meeting at which the certification of the petition is presented, or within 10 days after it is presented[, or] (b) Submit the ordinance, without alteration, to the voters pursuant to Section 1405[,] or (c)" order a report from appropriate city agencies regarding the impact of the ordinance and then, upon receipt of the report, adopt the ordinance or submit it to the electorate for a vote.[6] However, since this case does not involve any government action taken under Elections Code section 9215, subdivision (a), we decline to address the Association's hypothetical scenario. Instead, this is a concern that should be addressed to the Legislature, as our limited function as a court is to construe the texts of Propositions 13 and 218 in the factual context presented here.

Additionally, although we are not required to do so, we address a related argument the Association raised for the first time at oral argument. (*Haight Ashbury Free Clinics,*

---

[6] While section 9215 applies only to initiatives in cities, there are comparable statutes in the Elections Code for other jurisdictions.

20.

*Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9 ["We do not consider arguments that are raised for the first time at oral argument."].) The gist of the argument as we understand it is that even when, as happened here, an initiative petition is submitted to the city council and the city council elects to submit the ordinance to the electorate for a vote, the city council would still be "imposing" the ordinance, which would implicate the provisions of Articles XIII A, section 4 and XIII C, section 2. Implicit in this argument is that all initiative petitions end up as local government "impositions" even when all the local government does is perform the ministerial function of submitting the measure as written to the electorate. Thus, regardless of whether a local government elects to proceed under subdivision (a) or subdivision (b) of Elections Code section 9215, the local government would still be "imposing" the ordinance. We reject the notion that all initiative petitions are transmuted into local government "impositions" in this manner.

## DISPOSITION

The judgments are reversed. On the City of Fresno's action, the trial court is ordered to enter a new judgment in favor of Fresno Building Healthy Communities declaring Measure P has passed. On Fresno Building Healthy Communities's action, the trial court is directed to enter a new judgment granting Fresno Building Healthy Communities's request for declaratory relief and declaring Measure P has passed. Any need for the issuance of a writ of mandate and the terms of that writ shall be decided in

the first instance by the trial court on remand.  Fresno Building Healthy Communities is awarded its costs on appeal.


                                                         SNAUFFER, J.

WE CONCUR:


FRANSON, Acting P.J.


PEÑA, J.

22.